UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY               08 CV 133 (LTS)
DISTRICT COUNCIL OF CARPENTERS ANNUITY                ECF CASE
FUND, NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS APPRENTICESHIP, JOURNEYMAN              **AFFIDAVIT OF COUNSEL**
RETRAINING, EDUCATIONAL AND INDUSTRY                  **IN SUPPORT OF**
FUND, NEW YORK CITY DISTRICT COUNCIL OF               **DEFAULT JUDGMENT**
CARPENTERS CHARITY FUND, and THE NEW
YORK CITY AND VICINITY CARPENTERS LABOR
MANAGEMENT COOPERATION FUND, by MICHAEL
J. FORDE, and PAUL O'BRIEN, as TRUSTEES, AND
MICHAEL J. FORDE, AS EXECUTIVE SECRETARY-
TREASURER, DISTRICT COUNCIL FOR NEW YORK
CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

                              Plaintiffs,


                 -against-


KBC CONCRETE CONSTRUCTION, INC .,

                              Defendant.
-------------------------------------------------------------------------------X
STATE OF NEW YORK         )
                          ) ss:
COUNTY OF NEW YORK   )

        ANDREW GRABOIS, Esq. being duly sworn, deposes and says,

        1.    I am associated with the firm of O'Dwyer & Bernstien, LLP, attorneys for plaintiffs

("Funds") in the above captioned action.  I am familiar with all the facts and circumstances in

this action.

        2.    I submit this affidavit in support of plaintiffs' motion to confirm the arbitration

award against KBC Concrete Construction, Inc. ("Defendant"), dated September 21, 2007.

3.    Upon information and belief Defendant is a corporation and not an infant, in the military or an incompetent.

4.    Subject matter jurisdiction of this action is based upon Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, Sections 502(a)(3)(B)(ii), (d)(1), (e) and (g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1132(a)(3)(B)(ii), (d)(1), (e) and (g), Section 515 of ERISA, 29 U.S.C. §1145, and Section 9 of the Federal Arbitration Act, 9 U.S.C. §9.  Personal jurisdiction is based upon Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2).

5.    Plaintiffs brought this action to confirm an arbitration award to compel the production of Defendant's books and records pursuant to a collective bargaining agreement between the Defendant and the District Council for New York City and Vicinity, United Brotherhood of Carpenters and Joiners of America.

6.    Defendant is a signatory to a Project Agreement (hereinafter referred to as "Agreement") with the District Council for New York City and Vicinity, United Brotherhood of Carpenters and Joiners of America.  According to Article 1 of the Agreement, signatory contractors agree to "be bound to all provisions contained in the attached collective bargaining agreement …including but not limited to, the Employer's Obligation to pay contributions to all Fringe Benefit Funds".  Article 2 of the Agreement states that the Employer "agrees to be bound by all actions taken by the Trustees pursuant to the trust agreements and declarations of trust" (A true and correct copy of said Agreement is annexed hereto as Exhibit "A").

7.    Article 4, Section 3 of each of the applicable Declarations of Trust state that an "Employer is obligated to make available to the Trustees, the Fund's counsel, auditors, payroll auditing firm…its payroll books and records whenever the Trustees consider such an

examination to be advisable in connection with the administration of the Fund." (A true and correct copy of Article 4, Section 3 of each Fund's Declaration of Trust is annexed hereto as Exhibit "B").

8. Defendant has failed to furnish these records for the purpose of conducting an audit to ensure compliance with required benefit fund contributions as required under the Agreement.

9. Pursuant to the arbitration clause of the Agreement, a Notice of Intention to Arbitrate was issued (a copy is annexed hereto as Exhibit "C"), the dispute was submitted to arbitration to Robert Herzog, the duly designated impartial arbitrator. Thereafter, upon due notice to all parties (a copy annexed hereto as Exhibit "D"), the arbitrator held a hearing and rendered his award, in writing, dated September 21, 2007 determining said dispute. (A copy is annexed hereto as Exhibit "E"). Upon information and belief, a copy of the award was sent to the defendant.

10. The arbitrator found that KBC Concrete Construction, Inc. had failed to comply with the Agreement and directed it to furnish the Plaintiffs with any and all books and records, for the period of January 20, 2006 through September 21, 2007 including but not limited to, the cash disbursement section of the cash book, general ledger, job location records, daily time records and all certified payrolls.

11. The arbitrator also found that KBC Concrete Construction, Inc. was required to pay the funds a total sum of $2,350.00 pursuant to the Agreement, representing costs incurred in the arbitration.

12. The award has not been vacated or modified and no application for such relief is currently pending or has been made.

13. Plaintiffs commenced this action on January 7, 2008 by filing a summons and complaint. (A copy is annexed hereto as Exhibit "F"). Plaintiffs subsequently served the

summons and complaint together with the Judge's rules upon Defendant by delivering two (2)

true copies of the same to the Secretary of the State of New York on January 11, 2008, pursuant

to Section 306(b) of New York Business Corporation Law and an affidavit of service was filed

with the Court on January 18, 2008. (A copy is annexed hereto as Exhibit "G").

14. After being served the Summons and Complaint on January 11, 2008, Defendant

provided the appropriate books and records to comply with the audit as obligated by the

Arbitrator's Award. To date, Defendant has failed to pay the applicable fees from the award.

15. Defendant has failed to answer or appear or move with respect to the complaint and

the time to do so has expired. (A copy of the Clerk's Certificate is annexed hereto as Exhibit

"H").

16. There has been no prior application for relief sought herein.

WHEREFORE, Plaintiffs seek a judgment against Defendant and in favor of plaintiffs as

follows:

      a.  confirming the arbitrator's award;

      b.  awarding judgment for the plaintiffs and against Defendant in the principal

          amount of $2,350.00;

      c.  attorneys' fees and costs arising out of this confirmation action as

          determined by the court. (An Affidavit of Services is annexed hereto as

          Exhibit "I" and a proposed Judgment is annexed hereto as Exhibit "J");

d.  such other and further relief as this Court may deem just and proper

ANDREW GRABOIS (AG 3192)

Sworn to before me this
15th day of May, 2008

NOTARY PUBLIC

ROSA FALLON
Commissioner of Deeds
City of New York - No. 2-12032
Qualified in Kings County
Commission Expires Jan 01, 20 10

## PROJECT AGREEMENT: VOLUNTARY RECOGNITION

Project: APPLEBEES_____

Project No.: _____
Agency Contract No.:___

Project Address: VETERAN RD STATEN ISLAND NY_____

This Agreement made this 20 ᵀᴴ day of JANUARY    2006, between **KBC CONCRETE CONSTRUCTION CORP.**_____ (*"Employer"*) and the District Council for New York City and Vicinity, United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("*Union*").

   *Voluntary Recognition*: The Employer voluntarily recognizes the Union as the exclusive bargaining agent for all of its employees covered under the attached collective bargaining Agreement. The Employer agrees that it will deal with the Union, directly as to terms and conditions of employment concerning said covered employees, without the requirement that the Union demonstrate that it has a majority status of all covered employees in the appropriate bargaining unit. The Employer acknowledges and agrees that there exists no good faith doubt that the Union maintains a majority status.

   **1.**    *Incorporation of Attached Collective Bargaining Agreement*. The Employer agrees to be bound to all provisions contained in the attached collective bargaining agreement (*"Agreement"*) and said provisions are incorporated into this Project Agreement by reference, including but not limited to, the Employer's Obligation to pay contributions to all Fringe Benefit Funds contained in the attached Agreement for the duration of this Project Agreement as provided in **Paragraph 5**, below.

   **2.**    *Declarations of Trust And Designation of Trustees*. The Employer further agrees to be bound to the applicable trust agreements and hereby irrevocably designates as its representatives on the Board of Trustees of the various Funds, such trustee or trustees as are named under the Trust Agreements as Employer trustees together with their successors selected in the manner provided within the trust agreements and agrees to be bound by all actions taken by the Trustees pursuant to the trust agreements and declarations of trust.

   **3.**    *Arbitration*. The Employer also agrees to arbitrate any and all disputes arising out of the attached Agreement as provided in the attached Agreement, regardless of termination of this project.

   **4.**    *Term*. This Project Agreement will remain in effect between the parties commencing on the date signed by the Union and for the remainder of the above referenced project and until all obligations in the attached Agreement are met, after which this Agreement will automatically terminate. In the event you should return to this geographical area again, to work within our trade jurisdiction, you agree that at that you will be bound to all of the terms of the industry wide District Council Independent Collective Bargaining Agreement then in existence, and that you will execute such agreement, and post the appropriate Surety Bond.

**Agreed Upon by:**

For the Union:

By:_____

Date_____

For the Business Agent

By: _Chris Spirito_

Date _1/19/06_

For the Employer:

By:_____

Date_____

Employer:    **KBC CONCRETE CONSTRUCTION CORP.**___

Employer' Address:    **2116 MERRICK AVENUE**_____
            **MERRICK NY 11566**_____

Tel:    **516-223-1044**_____

Fax:    **516-223-6591**_____

# PROJECT LABOR AGREEMENT
# COVERING SPECIFIED CONSTRUCTION
# WORK UNDER THE CAPITAL IMPROVEMENT
# AND RESTRUCTURING PROGRAMS (2005-2009)

### New York City School Construction Authority
### -and-
### Building and Construction Trades Council
### Of Greater New York and Vicinity

# TABLE OF CONTENTS

Page

ARTICLE 1 - PREAMBLE..................................................................................................1
    SECTION 1. PARTIES TO THE AGREEMENT ................................................2

ARTICLE 2 - GENERAL CONDITIONS ..........................................................................3
    SECTION 1. DEFINITIONS .................................................................................3

    SECTION 2. CONDITIONS FOR AGREEMENT TO BECOME EFFECTIVE ..........3

    SECTION 3. ENTITIES BOUND & ADMINISTRATION OF AGREEMENT .........4

    SECTION 4. SUPREMACY CLAUSE ................................................................4

    SECTION 5. LIABILITY ......................................................................................5

    SECTION 6. THE AUTHORITY ..........................................................................5

    SECTION 7. AVAILABILITY AND APPLICABILITY TO ALL SUCCESSFUL BIDDERS ................5

ARTICLE 3 – SCOPE OF THE AGREEMENT ................................................................6
    SECTION 1. WORKED COVERED .....................................................................6

    SECTION 2. TIME LIMITATIONS ......................................................................7

    SECTION 3. EXCLUDED EMPLOYEES .............................................................8

    SECTION 4. NON-APPLICATION TO CERTAIN ENTITIES .............................9

ARTICLE 4 - UNION RECOGNITION AND EMPLOYMENT ....................................10
    SECTION 1. PRE-HIRE RECOGNITION ..........................................................10

    SECTION 2. UNION REFERRAL ......................................................................10

    SECTION 3. NON-DISCRIMINATION IN REFERRALS ..................................12

    SECTION 4. MINORITY AND FEMALE REFERRALS ....................................12

    SECTION 5. CROSS AND QUALIFIED REFERRALS .....................................12

    SECTION 6. UNION DUES ................................................................................13

    SECTION 7. CRAFT FOREPERSONS AND GENERAL FOREPERSONS ...........13

ARTICLE 5 - UNION REPRESENTATION .....................................................................14
    SECTION 1. LOCAL UNION REPRESENTATIVE ...........................................14

    SECTION 2. STEWARDS ...................................................................................14

    SECTION 3. LAYOFF OF A STEWARD ...........................................................15

ARTICLE 6 - MANAGEMENT'S RIGHTS .....................................................................15
    SECTION 1. RESERVATION OF RIGHTS ........................................................15

ARTICLE 7 - WORK STOPPAGES AND LOCKOUTS ....................................................... 16
    SECTION 1. NO STRIKES-NO LOCK OUT ........................................................ 16

    SECTION 2. DISCHARGE FOR VIOLATION ...................................................... 17

    SECTION 3. NOTIFICATION ........................................................................... 17

    SECTION 4. EXPEDITED ARBITRATION ......................................................... 18

    SECTION 5. ARBITRATION OF DISCHARGES FOR VIOLATION .................... 20

ARTICLE 8 - LABOR MANAGEMENT COMMITTEE ................................................... 21
    SECTION 1. SUBJECTS .................................................................................. 21

    SECTION 2. COMPOSITION ........................................................................... 21

ARTICLE 9 - GRIEVANCE & ARBITRATION PROCEDURE ......................................... 21
    SECTION 1. PROCEDURE FOR RESOLUTION OF GRIEVANCES ................... 21

    SECTION 2. LIMITATION AS TO RETROACTIVITY ....................................... 24

    SECTION 3. PARTICIPATION BY CONSTRUCTION PROJECT MANAGER ...... 24

ARTICLE 10 - JURISDICTIONAL DISPUTES ............................................................. 24
    SECTION 1. NO DISRUPTIONS ...................................................................... 24

    SECTION 2. ASSIGNMENT ............................................................................ 25

    SECTION 3. NO INTERFERENCE WITH WORK ............................................. 25

ARTICLE 11 - WAGES AND BENEFITS ...................................................................... 25
    SECTION 1. CLASSIFICATION AND BASE HOURLY RATE ............................ 25

    SECTION 2. EMPLOYEE BENEFITS ............................................................... 25

ARTICLE 12 - HOURS OF WORK, PREMIUM PAYMENTS, SHIFTS AND HOLIDAYS ......... 26
    SECTION 1. WORK WEEK AND WORK DAY .................................................. 26

    SECTION 2. OVERTIME ................................................................................. 28

    SECTION 3. SHIFTS ....................................................................................... 28

    SECTION 4. HOLIDAYS .................................................................................. 30

    SECTION 5. REPORTING PAY ....................................................................... 30

    SECTION 6. PAYMENT OF WAGES ............................................................... 32

    SECTION 7: EMERGENCY WORK SUSPENSION ............................................ 32

    SECTION 8. INJURY/DISABILITY .................................................................. 32

    SECTION 9. TIME KEEPING .......................................................................... 33

    SECTION 10. MEAL PERIOD .......................................................................... 33

SECTION 11.  BREAK PERIODS .................................................................................................33
ARTICLE 13 – APPRENTICES .................................................................................................34
        SECTION 1.  RATIOS ..................................................................................................34
ARTICLE 14 - SAFETY PROTECTION OF PERSON AND PROPERTY .............................34
        SECTION 1.  SAFETY REQUIREMENTS .................................................................34
        SECTION 2.  CONTRACTOR RULES ........................................................................35
        SECTION 3.  INSPECTIONS .......................................................................................35
ARTICLE 15 - NO DISCRIMINATION .....................................................................................35
        SECTION 1.  COOPERATIVE EFFORTS ..................................................................35
        SECTION 2.  LANGUAGE OF AGREEMENT ..........................................................35
ARTICLE 16 - GENERAL TERMS ............................................................................................36
        SECTION 1.  PROGRAM WORK RULES ..................................................................36
        SECTION 2.  TOOLS OF THE TRADE ......................................................................36
        SECTION 3.  SUPERVISION ......................................................................................36
        SECTION 4.  TRAVEL ALLOWANCES .....................................................................37
        SECTION 5.  FULL WORK DAY .................................................................................37
        SECTION 6.  COOPERATION AND WAIVER ...........................................................37
ARTICLE 17.  SAVINGS AND SEPARABILITY ......................................................................38
        SECTION 1.  THIS AGREEMENT ..............................................................................38
        SECTION 2.  THE BID SPECIFICATIONS ...............................................................38
        SECTION 3.  NON-LIABILITY ...................................................................................39
        SECTION 4.  NON-WAIVER .......................................................................................39
ARTICLE 18 - FUTURE CHANGES IN SCHEDULE A AREA CONTRACTS .......................39
        SECTION 1.  CHANGES TO AREA CONTRACTS ...................................................39
        SECTION 2.  LABOR DISPUTES DURING AREA CONTRACT NEGOTIATIONS ....40
ARTICLE 19 - WORKERS' COMPENSATION ADR .................................................................41
        SECTION 1. ................................................................................................................41

**To All New York City School Construction Authority (SCA)
Prequalified Contractors and Consultants**

## PROJECT LABOR AGREEMENT

A Project Labor Agreement ("PLA") has been negotiated and executed by and between the New York City School Construction Authority ("SCA"), the Building and Construction Trades Council ("BCTC") and its member unions, and the Bricklayers and Allied Craftworkers Local Union 1. The PLA will govern the relationship between the SCA, its contractors, and labor with respect to construction work to be performed under Capital Improvement and Restructuring Programs of the Five-Year Capital Plan FY 05-09 ("Plan").

The PLA has been executed to promote labor harmony on the project; expedite the construction process and reduce construction costs; provide standardized terms and conditions of employment, flexibility in scheduling, enhancement of employment opportunities for minority, women and disadvantaged persons; and create a safer construction site by avoiding work in occupied school buildings. The following are some of the major provisions of the PLA:

-Prohibits strikes, work stoppages, picketing, and other disruptive union activity.

-Provides a uniform dispute resolution procedure.

-Permits a second or third shift without a first shift.

-Both second and third shift work (assuming that such shift is the first of the day) to be performed at a flat 5% differential.

-Work may be scheduled on a five (5)-day or four (4)-day (10 hours per day) basis (40 hours per week) at straight time rates.

-Recognizes six (6) standard holidays for all trades with payment for work on those days governed by the applicable CBA.

-Increases the ratio of apprentices to journeymen by providing for a minimum 3:1 apprenticeship ratio.

-Contains a broad management rights clause whereby contractors retain full and exclusive authority for the management of their operations, including the right to direct the workforce, assignment and schedule of work, and promulgation of reasonable work rules.

As a condition of being awarded a contract or subcontract for work within the coverage of the PLA, each successful bidder and subcontractor of any tier on the project, agrees to become signatory to, and to abide by, the provisions of the PLA. The PLA will be attached to and included as part of the Solicitation Documents. Additional copies of the PLA Agreement may be obtained from the SCA, 30-30 Thomson Avenue, Long Island City, NY 11101.  The PLA will also be available on the SCA's website at www.nycsca.org.

If you have any questions or would like additional information, please call Ross J. Holden, Vice President & General Counsel at (718)-472-8220.

2

# PROJECT LABOR AGREEMENT COVERING
# SPECIFIED CONSTRUCTION ON BEHALF OF THE
# NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY

## ARTICLE 1 - PREAMBLE

WHEREAS, the New York City School Construction Authority ("Authority"), acting as its own Construction Manager, desires to provide for the cost efficient, safe, quality, and timely completion of certain rehabilitation and renovation work performed under the Authority's Capital Improvement Program ("CIP") and Restructuring Program ("Program Work," as defined in Article 3) for Fiscal Years 2005 to 2009 in a manner designed to afford the lowest costs to the Authority, and the Public it represents, and the advancement of permissible statutory objectives;

WHEREAS, this Project Labor Agreement will foster the achievement of these goals, inter alia, by:

(1)    providing a mechanism for responding to the unique construction needs associated with this Program Work and achieving the most cost effective means of construction, including direct labor cost savings, the Building and Construction Trades Council of Greater New York and Vicinity, on its behalf and on behalf of its affiliated Local Unions and their members, waiving various shift and other hourly premiums and other work and pay practices which would otherwise apply to Program Work;

(2)    expediting the construction process and otherwise minimizing the disruption to the educational environment of New York City public schools;

(3)    promoting the statutory objectives stated in the Authority's enabling legislation, Public Authorities Law § 1725 et seq., in a non-discriminatory manner designed to open construction opportunities to all qualified bidders;

(4)    avoiding the costly delays of potential strikes, slowdowns, walkouts, picketing and other disruptions arising from work disputes and promoting labor harmony and peace for the duration of the Program Work;

(5)    standardizing the terms and conditions governing the employment of labor on the Program Work;

1

(6)    permitting wide flexibility in work scheduling and shift hours and times to allow maximum work to be done during off-school hours yet at affordable pay rates;

(7)    permitting adjustments to work rules and staffing requirements from those which otherwise might obtain;

(8)    providing comprehensive and standardized mechanisms for the settlement of work disputes, including those relating to jurisdiction;

(9)    furthering public policy objectives as to improved employment opportunities for minorities, women and the economically disadvantaged through Project Pathways and other such programs;

(10)    ensuring a reliable source of skilled and experienced labor;

and, WHEREAS, the Building and Construction Trades Council of Greater New York and Vicinity, its affiliated Local Unions and their members, desire to assist the Authority in improving public education in the City of New York, as well as to provide for stability, security and work opportunities which are afforded by a Project Labor Agreement;

and, WHEREAS, the Parties desire to maximize Program Work safety conditions for both workers and users of New York City Schools under construction;

NOW, THEREFORE, the Parties enter into this Agreement:

## SECTION 1. PARTIES TO THE AGREEMENT

This is a Project Labor Agreement ("Agreement") for rehabilitation and renovation work to be performed under the defined CIP and Restructuring Program entered into by the New York City School Construction Authority and the Building and Construction Trades Council of Greater New York and Vicinity ("Council") (on behalf of itself and its affiliated Local Unions and their members) ("Local Unions"). The Council hereby warrants and represents that it has been duly authorized to enter into this Agreement on behalf of, and to bind,

2

its affiliated Local Unions and their members, as well as itself, as if each had individually signed this Agreement.

## ARTICLE 2 - GENERAL CONDITIONS
## SECTION 1.  DEFINITIONS

Throughout this Agreement, the various Union parties, including the Building and Construction Trades Council of Greater New York and Vicinity and its affiliated Local Unions, are referred to singularly and collectively as "Union(s)"; where specific reference is made to "Local Unions," that phrase is sometimes used; the term "Contractor(s)" shall include any Construction Project Manager who may serve as a successor to the Authority in that role, to General Contractors and to all other contractors, and  subcontractors of whatever tier, engaged in Program Work within the scope of this Agreement as defined in Article 3;  the New York City School Construction Authority is referred to as the "Authority," except that when the Authority is referred to in its capacity as Construction Project Manager, it (or any successor to the Authority acting in that capacity) is referred to as "Construction Project Manager;" the Building and Construction Trades Council of Greater New York and Vicinity is referred to as the "Council"; and the work covered by this Agreement (as defined in Article 3) is referred to as "Program Work".

## SECTION 2.  CONDITIONS FOR AGREEMENT TO BECOME EFFECTIVE

This Agreement shall not become effective unless each of the following conditions are met:  (1) the Agreement is signed by the Council, on behalf of itself, its affiliated Local Unions and their members; and (2) the Agreement is approved and signed by the President and Chief Executive Officer of the Authority.

3

## SECTION 3.  ENTITIES BOUND & ADMINISTRATION OF AGREEMENT

This Agreement shall be binding on all Unions and their affiliates, the Construction Project Manager (in its capacity as such) and all Contractors performing  Program Work, as defined in Article 3.  The Contractors shall include in any subcontract that they let for performance during the term of this Agreement a requirement that their subcontractors, of whatever tier, become signatory and bound by this Agreement with respect to that subcontracted work falling within the scope of Article 3.  This Agreement shall be administered by the Construction Project Manager or such other designee as may be named by the Authority, on behalf of all Contractors.

## SECTION 4.  SUPREMACY CLAUSE

This Agreement, together with the local Collective Bargaining Agreements appended hereto as Schedule A, represents the complete understanding of all signatories and supersedes any national agreement, local agreement or other collective bargaining agreement of any type which would otherwise apply to Program Work, in whole or in part.  Where a subject covered by the provisions of this Agreement is also covered by a Schedule A, the provisions of this Agreement shall prevail.  It is further understood that no Contractor shall be required to sign any other agreement as a condition of performing Program Work.  No practice, understanding or agreement between a Contractor and a Local Union which is not  set forth in this Agreement shall be binding on Program Work unless endorsed in writing by the Construction Project Manager or such other designee as may be designated by the Authority.

4

## SECTION 5.  LIABILITY

The liability of any Contractor and the liability of any Union under this Agreement shall be several and not joint.  The Construction Project Manager and any Contractor shall not be liable for any violations of this Agreement by any other Contractor; and the Council and Local Unions shall not be liable for any violations of this Agreement by any other Union.

## SECTION 6.  THE AUTHORITY

The Authority shall require in its bid specifications for all Program Work within the scope of Article 3 that all successful bidders, and their subcontractors of whatever tier, become bound by, and signatory to, this Agreement.  The Authority (including in its role as Construction Project Manager) shall not be liable for any violation of this Agreement by any Contractor.  It is understood that nothing in this Agreement shall be construed as limiting the sole discretion of the Authority (including in its role as Construction Project Manager) in determining which Contractors shall be awarded contracts for Program Work.  It is further understood that the Authority (including in its role as Construction Project Manager) has sole discretion at any time to terminate, delay or suspend the Program Work, in whole or part.

## SECTION 7.  AVAILABILITY AND APPLICABILITY
## TO ALL SUCCESSFUL BIDDERS

The Unions agree that this Agreement will be made available to, and will fully apply to, any successful bidder for Program Work who becomes signatory thereto, without regard to whether that successful bidder performs work at other sites on either a union or non-union basis and without regard to whether employees of such successful bidder are, or are not,

5

members of any unions.  This Agreement shall not apply to the work of any Contractor which is performed at any location other than the site of Program Work.

# ARTICLE 3 – SCOPE OF THE AGREEMENT
## SECTION 1.  WORKED COVERED

Program Work shall be limited to designated rehabilitation and renovation construction contracts bid and let by the New York City School Construction Authority after the effective date of this Agreement for rehabilitation and renovation work performed on New York City Public Schools pursuant to funds authorized under the Capital Improvement and Restructuring Programs for Fiscal Years 2005 to 2009.  Subject to the foregoing, and the exclusions below, such Program Work generally shall include demolition, reconstruction, rehabilitation, renovation work associated with school improvement and restructuring, technology enhancement, safety enhancement, general enhancement, CIP and other programs and needs as set forth in the Capital Program.

It is understood that Program Work does not include, and this Project Labor Agreement shall not apply to, any other work, including:

1.     Contracts let and work performed in connection with projects carried over, recycled from, or performed under bids or rebids relating to work initiated under Fiscal Years Programs prior to 2005, or to any contracts for Fiscal Year Programs after 2005 which have been bid prior to the effective date of this Agreement.

2.     Contracts let and work performed in connection with any and all Mentor Contracts involving minority and women contractors, provided such contracts have a value of $1,000,000 or less.

6

3.    Contracts let by and work performed under the authority of the New York City Department of Education or the New York City Department of Design and Construction.

4.    Contracts let and work performed for lease build out construction.

5.    Contracts let and work performed under the New Capacity Program of the Capital Plan (including new building construction, additions to existing facilities, and lease build outs).

6. Contracts let and work performed under the Charter and Partnership Schools Program of the Capital Plan.

7.    Contracts let and work performed for Maintenance and Janitorial work.

8.    Technology Enhancements to the extent they do not involve construction services.

9.    Contracts let and worked performed which is supported by federal funding or financial assistance and falls within the coverage of Executive Order 13202 (or any similar rule, regulation or order), but only so long as Executive Order 13202 (or any similar rule, regulation or order) is in effect.


## SECTION 2.  TIME LIMITATIONS

In addition to falling within the scope of Section 1, to be covered by this Agreement Program Work must be (1) let for bid after the effective date of this Agreement, and (2) let for bid prior to June 30, 2009, the expiration date of this Agreement.  It is understood that this Agreement, together with all of its provisions, shall remain in effect for all such Program Work until completion, even if not completed by the expiration date of the Agreement.  If Program Work otherwise falling within the scope of Section 1 is not let for bid by the expiration

date of this Agreement, this Agreement may be extended to that work by mutual agreement of the parties.

## SECTION 3.  EXCLUDED EMPLOYEES

The following persons are not subject to the provisions of this Agreement, even though performing Program Work:

a. Superintendents, supervisors (excluding general and forepersons specifically covered by a craft's Schedule A), engineers, professional engineers and/or licensed architects engaged in inspection and testing, quality control/ assurance personnel, timekeepers, mail carriers, clerks, office workers, messengers, guards, technicians, non-manual employees, and all professional, engineering, administrative and management persons;

b. Employees of the Authority, or of any New York City or other municipal or State agency, authority or entity (including but not limited to employees of the New York City Department of Education), or employees of any other public employer, even though working on the Program site while covered Program Work is underway;

c. Employees and entities engaged in off-site manufacture, modifications, repair, maintenance, assembly, painting, handling or fabrication of project components, materials, equipment or machinery or involved in deliveries to and from the Program site;

d. Employees of the Construction Project Manager (except that in the event the Authority engages a contractor to serve as Construction Project

Manager, then those employees of the Construction Project Manager performing manual, on site construction labor will be covered by this Agreement);

e.   Employees engaged in on-site equipment warranty work;

f.   Employees engaged in geophysical testing other than boring for core samples;

g.   Employees engaged in laboratory, specialty testing, or inspections, pursuant to a professional services agreement between the Authority, or any of the Authority's other professional consultants, and such laboratory, testing, inspection or surveying firm;

h.   Employees engaged in work which is ancillary to Program Work and performed by third parties such as electric utilities, gas utilities, telephone companies, and railroads.

i.   Employees engaged in technology installation (except to the extent they are involved in construction services in connection with such installation).

## SECTION 4.  NON-APPLICATION TO CERTAIN ENTITIES

This Agreement shall not apply to those parents, affiliates, subsidiaries, or other joint or sole ventures of any Contractor which do not perform Program Work.  It is agreed, for the purposes of this Agreement only, that this Agreement does not have the effect of creating any joint employment, single employer or alter ego status among the Authority (including in its capacity as Construction Project Manager) or any Contractor.  The Agreement shall further not apply to the Authority or any New York City or other municipal or State agency, authority, or

9

entity (including but not limited to the New York City Department of Education or the Department of Design & Construction), or any other public entity, and nothing contained herein shall be construed to prohibit or restrict the Authority or its employees or any State, New York City or other municipal or State authority, agency or entity (including but not limited to the New York City Department of Education or DDC) and its employees from performing on or off-site work related to Programs.  As the contracts involving covered work are completed and accepted, the Agreement shall not have further force or effect on such items or areas except where inspections, additions, repairs, modifications, check-out and/or warranty work are assigned in writing (copy to Local Union involved) by the Construction Project Manager for performance under the terms of this Agreement.

## ARTICLE 4 - UNION RECOGNITION AND EMPLOYMENT
### SECTION 1.  PRE-HIRE RECOGNITION

The Contractors recognize the Unions as the sole and exclusive bargaining representatives of all craft employees who are performing on-site Program Work, with respect to that work.

### SECTION 2.  UNION REFERRAL

A.      The Contractors agree to hire craft employees for Program Work covered by this Agreement through the job referral systems and hiring halls (where the referrals meet the qualifications set forth in items 1, 2 and 4 of subparagraph B) established in the Local Unions' area collective bargaining agreements (attached as Schedule A to this Agreement). Notwithstanding this,  Contractors shall have sole right to determine the competency of all

10

referrals; to determine the number of employees required; select employees for layoff (subject to Article 5, Section 3); and the sole right to reject any applicant referred by a Local Union, subject to required show-up payments. In the event that a Local Union is unable to fill any request for qualified employees within a 48-hour period after such requisition is made by a Contractor (Saturdays, Sundays and holidays excepted), a Contractor may employ qualified applicants from any other available source. In the event that the Local Union does not have a job referral system, the Contractor shall give the Local Union first preference to refer applicants, subject to the other provisions of this Article. The Contractor shall notify the Local Union of craft employees hired for Program Work within its jurisdiction from any source other than referral by the Union.

B.    A Contractor may request by name, and the Local will honor, referral of persons who have applied to the Local for Program Work and who meet the following qualifications:

(1)    possess any license required by New York State law for the Program Work to be performed;

(2)    have worked a total of at least 1000 hours in the Construction field during the prior 3 years; and

(3)    were on the Contractor's active payroll for at least 60 out of the 180 calendar days prior to the contract award.

No more than twelve per centum (12%) of the employees covered by this Agreement, per Contractor by craft, shall be hired through the special provisions above. Under this provision, name referrals begin with the eighth employee needed and continue on that same basis.

11

## SECTION 3.  NON-DISCRIMINATION IN REFERRALS

The Council represents that each Local Union hiring hall and referral system will be operated in a non-discriminatory manner and in full compliance with all applicable federal, state and local laws and regulations which require equal employment opportunities. Referrals shall not be affected in any way by the rules, regulations, bylaws, constitutional provisions or any other aspects or obligations of union membership, policies or requirements and shall be subject to such other conditions as are established in this Article.  No employment applicant shall be discriminated against by any referral system or hiring hall because of the applicant's union membership, or lack thereof.

## SECTION 4.  MINORITY AND FEMALE REFERRALS

In the event a Local Union either fails, or is unable, to refer qualified minority or female applicants in percentages equaling affirmative action goals as set forth in the Authority's bid specifications, the Contractor may employ qualified minority or female applicants from any other available source.

## SECTION 5.  CROSS AND QUALIFIED REFERRALS

The Local Unions shall not knowingly refer to a Contractor an employee then employed by another Contractor working under this Agreement.  The Local Unions will exert their utmost efforts to recruit sufficient numbers of skilled and qualified crafts employees to fulfill the requirements of the Contractor.

12

## SECTION 6.  UNION DUES

All employees covered by this Agreement shall be subject to the union security provisions contained in the applicable Schedule A local agreements, as amended from time to time, but only for the period of time during which they are performing on-site Program Work and only to the extent of tendering payment of the applicable union dues and assessments uniformly required for union membership in the Local Unions which represents the craft in which the employee is performing Program Work.  No employee shall be discriminated against at any Program Work site because of the employee's union membership or lack thereof.  In the case of unaffiliated employees, the dues payment will be received by the Local Unions as an agency shop fee.

## SECTION 7.  CRAFT FOREPERSONS AND GENERAL FOREPERSONS

The selection of craft forepersons and/or general forepersons and the number of forepersons required shall be solely the responsibility of the Contractor except where otherwise provided by specific provisions of an applicable Schedule A.  All forepersons shall take orders exclusively from the designated Contractor representatives.  Craft forepersons shall be designated as working forepersons at the request of the Contractor, except when an existing local Collective Bargaining Agreement prohibits a foreperson from working when the craftspersons he is leading exceed a specified number.

# ARTICLE 5 - UNION REPRESENTATION

## SECTION 1.  LOCAL UNION REPRESENTATIVE

Each Local Union representing on-site Program Work employees shall be entitled to designate in writing (copy to Contractor involved and Construction Project Manager) one representative, and/or the Business Manager, who shall be afforded access to the Program Work site.

## SECTION 2.  STEWARDS

(a)  Each Local Union shall have the right to designate a working journey person as a Steward and an alternate, and shall notify the Contractor and Construction Project Manager of the identity of the designated Steward (and alternate) prior to the assumption of such duties. Stewards shall not exercise supervisory functions and will receive the regular rate of pay for their craft classifications.  There will be no non-working Stewards.

(b)  In addition to their work as an employee, the Steward shall have the right to receive complaints or grievances and to discuss and assist in their adjustment with the Contractor's appropriate supervisor.  Each Steward shall be concerned with the employees of the Steward's Contractor and, if applicable, subcontractors of that Contractor, but not with the employees of any other Contractor.  The Contractor will not discriminate against the Steward in the proper performance of Union duties.

14

(c)  The Stewards shall not have the right to determine when overtime shall be worked, or who shall work overtime except pursuant to a Schedule A provision providing procedures for the equitable distribution of overtime.

## SECTION 3.  LAYOFF OF A STEWARD

Contractors agree to notify the appropriate Union 24 hours prior to the layoff of a Steward, except in cases of discipline or discharge for just cause.  If a Steward is protected against layoff by a Schedule A provision, such provision shall be recognized to the extent the Steward possesses the necessary qualifications to perform the work required.  In any case in which a Steward is discharged or disciplined for just cause, the Local Union involved shall be notified immediately by the Contractor.

## ARTICLE 6 - MANAGEMENT'S RIGHTS
## SECTION 1.  RESERVATION OF RIGHTS

Except as expressly limited by a specific provision of this Agreement, Contractors retain full and exclusive authority for the management of their operations including, but not limited to:  the right to direct the work force, including determination as to the number of employees to be hired and the qualifications therefore; the promotion, transfer, layoff of its employees; or the discipline or discharge for just cause of its employees; the assignment and schedule of work; the promulgation of reasonable Program Work rules that are not inconsistent with this Agreement or rules common in the industry and are reasonably related to the nature of the work; and, the requirement, timing and number of employees to be utilized for overtime work. No rules, customs, or practices which limit or restrict productivity or efficiency of the

15

individual, as determined by the Contractor or Authority (including in its role as Construction Project Manager), and/or joint working efforts with other employees shall be permitted or observed.

## SECTION 2.  MATERIALS, METHODS & EQUIPMENT

There shall be no limitation or restriction upon the Contractors' choice of materials, techniques, methods, technology or design, or, regardless of source or location, upon the use and installation of equipment, machinery, package units, pre-cast, pre-fabricated, pre-finished, or pre-assembled materials or products, tools, or other labor-saving devices. Contractors may, without restriction, install or use materials, supplies or equipment regardless of their source.  The on-site installation or application of such items shall be performed by the craft having jurisdiction over such work; provided, however, it is recognized that other personnel having special qualifications may participate, in a supervisory capacity, in the installation, check-off or testing of specialized or unusual equipment or facilities as designated by the Contractor. There shall be no restrictions as to work which is performed off-site for Program Work.

## ARTICLE 7 - WORK STOPPAGES AND LOCKOUTS
## SECTION 1.  NO STRIKES-NO LOCK OUT

There shall be no strikes, sympathy strikes, picketing, work stoppages, slowdowns, hand billing, demonstrations or other disruptive activity at the Program Work site for any reason by any Union or employee against any Contractor or employer.  There shall be no other Union, or concerted or employee activity which disrupts or interferes with the operation of the Program Work or the educational mission and objectives of the New York City public

16

schools at any Program Work site. Failure of any Union or employee to cross any picket line established by any Union, signatory or non-signatory to this Agreement, or the picket or demonstration line of any other organization, at or in proximity to a Program Work site is a violation of this Article. Should any employees breach this provision, the Unions will use their best efforts to try to immediately end that breach and return all employees to work. There shall be no lockout at a Program Work site by any signatory Contractor.

## SECTION 2. DISCHARGE FOR VIOLATION

A Contractor may discharge any employee violating Section 1, above, and any such employee will not be eligible thereafter for referral under this Agreement for a period of 100 days.

## SECTION 3. NOTIFICATION

If a Contractor contends that any Union has violated this Article, it will notify the Local Union involved advising of such fact, with copies of the notification to the Council. The Local Union shall instruct and order, the Council shall request, and each shall otherwise use their best efforts to cause, the employees (and where necessary the Council shall use its best efforts to cause the Local Union), to immediately cease and desist from any violation of this Article. If the Council complies with these obligations it shall not be liable for the unauthorized acts of a Local Union or its members. Similarly, a Local Union and its members will not be liable for any unauthorized acts of the Council. Failure of a Contractor or the Construction Project Manager to give any notification set forth in this Article shall not excuse any violation of Section 1 of this Article.

17

## SECTION 4.  EXPEDITED ARBITRATION

Any Contractor or Union alleging a violation of Section 1 of this Article may utilize the expedited procedure set forth below (in lieu of, or in addition to, any actions at law or equity) that may be brought.

a.  A party invoking this procedure shall notify John Feerick or Jeffrey Selchick who shall alternate (beginning with Arbitrator Feerick) as Arbitrator under this expedited arbitration procedure.  If the Arbitrator next on the list is not available to hear the matter within 24 hours of notice, the next Arbitrator on the list shall be called.  Copies of such notification will be simultaneously sent to the alleged violator and Council.

b.  The Arbitrator shall thereupon, after notice as to time and place to the Contractor, the Local Union involved, the Council and the Construction Project Manager, hold a hearing within 48 hours of receipt of the notice invoking the procedure if it is contended that the violation still exists.  The hearing will not, however, be scheduled for less than 24 hours after the notice to the district or area council required by Section 3, above.

c.  All notices pursuant to this Article may be provided by telephone, telegraph, hand delivery, or fax, confirmed by overnight delivery, to the Arbitrator, Contractor,  Construction Project Manager and Local Union

18

involved.  The hearing may be held on any day including Saturdays or Sundays.  The hearing shall be completed in one session, which shall not exceed 8 hours duration (no more than 4 hours being allowed to either side to present their case, and conduct their cross examination) unless otherwise agreed.  A failure of any Union or Contractor to attend the hearing shall not delay the hearing of evidence by those present or the issuance of an award by the Arbitrator.

d.    The sole issue at the hearing shall be whether a violation of Section 1, above, occurred.  If a violation is found to have occurred, the Arbitrator shall issue a Cease and Desist Award restraining such violation and serve copies on the Contractor and Union involved.  The Arbitrator shall have no authority to consider any matter in justification, explanation or mitigation of such violation or to award damages (any damages issue is reserved solely for court proceedings, if any.)  The Award shall be issued in writing within 3 hours after the close of the hearing, and may be issued without an Opinion.  If any involved party desires an Opinion, one shall be issued within 15 calendar days, but its issuance shall not delay compliance with, or enforcement of, the Award.

e.    An Award issued under this procedure may be enforced by any court of competent jurisdiction upon the filing of this Agreement together with the Award.  Notice of the filing of such enforcement proceedings shall be

19

given to the Union or Contractor involved, and the Construction Project Manager. In any court proceeding to obtain a temporary or preliminary order enforcing the Arbitrator's Award as issued under this expedited procedure, the involved Union and Contractor waive their right to a hearing and agree that such proceedings may be ex parte, provided notice is given to opposing counsel. Such agreement does not waive any party's right to participate in a hearing for a final court order of enforcement or in any contempt proceeding.

f.    Any rights created by statute or law governing arbitration proceedings which are inconsistent with the procedure set forth in this Article, or which interfere with compliance thereto, are hereby waived by the Contractors and Unions to whom they accrue.

g.    The fees and expenses of the Arbitrator shall be equally divided between the involved Contractor and Union.

## SECTION 5. ARBITRATION OF DISCHARGES FOR VIOLATION

Procedures contained in Article 9 shall not be applicable to any alleged violation of this Article, with the single exception that an employee discharged for violation of Section 1, above, may have recourse to the procedures of Article 9 to determine only if the employee did, in fact, violate the provisions of Section 1 of this Article; but not for the purpose of modifying the discipline imposed where a violation is found to have occurred.

# ARTICLE 8 - LABOR MANAGEMENT COMMITTEE

## SECTION 1.  SUBJECTS

The Program Labor Management Committee will meet on a regular basis to:  1) promote harmonious relations among the Contractors and Unions; 2) enhance safety awareness, cost effectiveness and productivity of construction operations; 3) protect the public interests; 4) discuss matters relating to staffing and scheduling with safety and productivity as considerations; and 5) review Affirmative Action and equal employment opportunity matters pertaining to Program Work.

## SECTION 2.  COMPOSITION

The Committee shall be jointly chaired by a designee of the Authority and the Council.  It may include representatives of the Local Unions and Contractors involved in the issues being discussed.  The Committee may conduct business through mutually agreed upon sub-committees.

# ARTICLE 9 - GRIEVANCE & ARBITRATION PROCEDURE

## SECTION 1.  PROCEDURE FOR RESOLUTION OF GRIEVANCES

Any question, dispute or claim arising out of, or involving the interpretation or application of this Agreement (other than jurisdictional disputes or alleged violations of Article 7, Section 1) shall be considered a grievance and shall be resolved pursuant to the exclusive procedure of the steps described below, provided in all cases that the question, dispute or claim arose during the term of this Agreement.

21

**Step 1:**

      (a)     When any employee covered by this Agreement feels aggrieved by a claimed violation of this Agreement, the employee shall, through the Local Union business representative or job steward, give notice of the claimed violation to the work site representative of the involved Contractor and the Construction Project Manager. To be timely, such notice of the grievance must be given within 7 calendar days after the act, occurrence or event giving rise to the grievance. The business representative of the Local Union or the job steward and the work site representative of the involved Contractor shall meet and endeavor to adjust the matter within 7 calendar days after timely notice has been given. If they fail to resolve the matter within the prescribed period, the grieving party, may, within 7 calendar days thereafter, pursue Step 2 of the grievance procedure by serving the involved Contractor with written copies of the grievance setting forth a description of the claimed violation, the date on which the grievance occurred, and the provisions of the Agreement alleged to have been violated. Grievances and disputes settled at Step 1 are nonprecedential except as to the specific Local Union, employee and Contractor directly involved unless the settlement is accepted in writing by the Construction Project Manager (or designee) as creating a precedent.

      (b) Should any signatory to this Agreement have a dispute (excepting jurisdictional disputes or alleged violations of Article 7, Section 1) with any other signatory to this Agreement and, if after conferring, a settlement is not reached within 7 calendar days, the dispute shall be reduced to writing and proceed to Step 2 in the same manner as outlined in subparagraph (a) for the adjustment of employee grievances.

**Step 2:**

        The Business Manager or designee of the involved Local Union, together with representatives of the involved Contractor, Council and the Construction Project Manager (or designee), shall meet in Step 2 within 7 calendar days of service of the written grievance to arrive at a satisfactory settlement.

**Step 3:**

        (a)    If the grievance shall have been submitted but not resolved in Step 2, any of the participating Step 2 entities may, within 21 calendar days after the initial Step 2 meeting, submit the grievance in writing (copies to other participants, including the Construction Project Manager or designee) to Jeffrey Selchick or John Feerick who shall act, alternately (beginning with Arbitrator Selchick), as the Arbitrator under this procedure. The Labor Arbitration Rules of the American Arbitration Association shall govern the conduct of the arbitration hearing, at which all Step 2 participants shall be parties. The decision of the Arbitrator shall be final and binding on the involved Contractor, Local Union and employees and the fees and expenses of such arbitrations shall be borne equally by the involved Contractor and Local Union.

        (b)  Failure of the grieving party to adhere to the time limits set forth in this Article shall render the grievance null and void. These time limits may be extended only by written consent of the Construction Project Manager (or designee), involved Contractor and involved Local Union at the particular step where the extension is agreed upon. The Arbitrator

shall have authority to make decisions only on the issues presented to him and shall not have the authority to change, add to, delete or modify any provision of this Agreement.

## SECTION 2.  LIMITATION AS TO RETROACTIVITY

No arbitration decision or award may provide retroactivity of any kind exceeding 60 calendar days prior to the date of service of the written grievance on the Construction Project Manager and the involved Contractor or Local Union.

## SECTION 3.  PARTICIPATION BY CONSTRUCTION PROJECT MANAGER

The Construction Project Manager (or such other designee of the Authority) shall be notified by the involved Contractor of all actions at Steps 2 and 3 and, at its election, may participate in full in all proceedings at these Steps, including Step 3 arbitration.

## ARTICLE 10 - JURISDICTIONAL DISPUTES

The New York Plan For the Settlement of Jurisdictional Disputes ("New York Plan") shall apply to the settlement of all jurisdictional disputes involving Program Work.

## SECTION 1.  NO DISRUPTIONS

There will be no strikes, sympathy strikes, work stoppages, slowdowns, picketing or other disruptive activity of any kind arising out of any jurisdictional dispute. Pending the resolution of the dispute, the work shall continue uninterrupted and as assigned by the Contractor.  No jurisdictional dispute shall excuse a violation of Article 7.

24

## SECTION 2.  ASSIGNMENT

All Program Work assignments shall be made by the Contractor pursuant to the Greenbook decisions of the New York Plan.  Where there are no applicable Greenbook decisions, assignments shall be made in accordance with the provisions of the New York Plan.

## SECTION 3.  NO INTERFERENCE WITH WORK

There shall be no interference or interruption of any kind with Program Work while any jurisdictional dispute is being resolved.  The work shall proceed as assigned by the Contractor until finally resolved under the applicable procedure of this Article.  The award shall be confirmed in writing to the involved parties.  There shall be no strike, work stoppage or interruption in protest of any such award.

## ARTICLE 11 - WAGES AND BENEFITS

## SECTION 1.  CLASSIFICATION AND BASE HOURLY RATE

All employees covered by this Agreement shall be classified in accordance with the work performed and paid the base, straight time hourly wage rates applicable for those classifications as required by the applicable prevailing wage laws.

## SECTION 2.  EMPLOYEE BENEFITS

A.    The Contractors agree to pay promptly contributions on behalf of all employees covered by this Agreement to those established jointly trusteed employee benefit funds designated in Schedule A (in the appropriate Schedule A amounts), provided that such benefits are required to be paid on public works under any applicable prevailing wage law.  Bona

25

fide jointly trusteed fringe benefit plans established or negotiated through collective bargaining during the life of this Agreement may be added if similarly required under applicable prevailing wage law. Contractors shall not be required to contribute to benefits, trusts or plans of any kind which are not required by the prevailing wage law.

    B.  The Contractor agrees to be bound by the written terms of the legally-established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds but only with regard to Program Work done under this Agreement and only for those employees to whom this Agreement requires such benefit payments.

## ARTICLE 12 - HOURS OF WORK, PREMIUM PAYMENTS, SHIFTS AND HOLIDAYS

### SECTION 1.  WORK WEEK AND WORK DAY

    A.  The standard work week shall consist of 40 hours of work at straight time rates per one of the following schedules:

        (1)  Five-Day Work Week:  5 days, 8 hours plus 1/2 hour unpaid lunch period each day.

        (2)  Four-Day Work Week:  4 days, 10 hours plus 1/2 hour unpaid lunch period each day.

    B.  In accordance with Program Work needs, the Day Shift shall commence between the hours of 6:00 a.m. and 9:00 a.m. and shall end between the hours of 2:30 p.m. and 7:30 p.m.  The Evening Shift shall commence between the hours of 3:00 p.m. and 6:00 p.m., unless different times are necessitated by the Authority's phasing plans on specific projects.  The

Night Shift shall commence between the hours of 11:00 p.m. and 2:00 a.m., unless different times are necessitated by the Authority's phasing plans on specific projects. Subject to the foregoing, starting and quitting times shall occur at the Program Work site designated by the Contractor.

      C.     Scheduling – Monday through Friday is the standard work week. The Contractor shall have the option of scheduling either a five-day or four-day work week and work day hours consistent with work requirements and with emphasis on the minimization of interference with the educational mission of the New York City public schools. (A Contractor may switch between five-day and four-day weeks only with notice to and approval of the Authority.) When conditions beyond the control of the Contractor, such as severe weather, power failure, fire or natural disaster, prevent the performance of Program Work on a regularly scheduled work day, the Contractor may, with mutual agreement of the Local Union on a craft-by-craft basis, schedule Friday (where on 4, 10's) or Saturday (where on 5, 8's) during that calendar week in which a workday was lost, at straight time pay (subject to Section 3 B), provided the employees involved work a total of 40 hours or less during that work week.

      D.     Notice - Contractors shall provide not less than 5 days prior notice to the Local Union involved as to the work week and work hour schedules to be worked or such lesser notice as may be mutually agreed upon.

## SECTION 2.  OVERTIME

Except as provided elsewhere in the PLA (e.g., Article 12, Section 1C and Article 12, Section 3B), overtime pay for hours outside of the standard work week and work day, described in paragraph A above, shall be paid in accordance with the applicable Schedule A. There will be no restriction upon the Contractor's scheduling of overtime or the non-discriminatory designation of employees who shall be worked, including the use of employees, other than those who have worked the regular or scheduled work week, at straight time rates, except that, in order to promote efficiency, weekend overtime work shall be offered first to members of the crew which handled that work during the week.  There shall be no pyramiding of overtime pay under any circumstances.  The Contractor shall have the right to schedule work so as to minimize overtime or schedule overtime as to some, but not all, of the crafts and whether or not of a continuous nature.

## SECTION 3.  SHIFTS

A.     Flexible Schedules - Scheduling of shift work, including Saturday and Sunday work, shall be within the discretion of the Contractor  in order to meet Program Work schedules and existing Program Work conditions including the minimization of interference with the educational mission of the New York City public schools.  It is not necessary to work a day shift in order to schedule a second or third shift, or a second shift in order to schedule a third shift, or to schedule all of the crafts when only certain crafts or employees are needed.  Shifts must have prior approval of the Construction Project Manager, and must be scheduled with not less than five work days notice to the Local Union.

B.     Second and/or Third Shifts/Saturday and/or Sunday Work - The second shift shall start between 3 p.m. and 6 p.m. and the third shift shall start between 11 p.m. and 2 a.m., subject to different times necessitated by the Authority's phasing plans on specific projects. There shall be no reduction in shift hours work; however, with respect to second and third shift work there shall be a 5% shift differential premium. This 5% shift differential premium shall also apply to second and/or third shift work performed on Saturdays or Sundays as make-up days, when necessitated by severe weather, power failure, fire or natural disaster or for similar circumstances beyond the Contractor's control. (The Contractor shall notify the Local Union on the missed day or as soon thereafter as practicable if such a make-up day is to be worked.) No other premium or other payments for such work shall be required unless such work is in excess of 40 hours in the week. Work performed on Saturdays or Sundays under circumstances other than as a make-up under the above-referenced conditions shall be paid at time and one-half or as provided in the applicable Schedule A, whichever is less. All employees within a classification performing Program Work will be paid at the same base wage rate regardless of the shift or work scheduled work, subject only to the foregoing provisions. The parties acknowledge that the foregoing, providing for second and third shift work to be performed at a 5% differential above the labor costs of day shift work, is material to the purposes of this Agreement.

C.     Flexible Starting Times - Shift starting times will be adjusted by the Contractor as necessary to fulfill Program Work requirements subject to the notice requirements of paragraph A.

29

D.    Four Tens – Notwithstanding any other provision of this Agreement, when working a four-day work week, the standard work day shall consist of 10 hours work for 10 hours of pay at the straight time rate exclusive of an unpaid 1/2 hour meal period and regardless of the starting time.

## SECTION 4. HOLIDAYS

A.    Schedule - There shall be 6 recognized holidays:

| | |
|---|---|
| New Years Day | Labor Day |
| Memorial Day | Thanksgiving Day |
| Fourth of July | Christmas Day |

All said holidays shall be observed on the dates designated by New York State Law.  In the absence of such designation, they shall be observed on the calendar date except those holidays which occur on Sunday shall be observed on the following Monday.

B.    Payment - Regular holiday pay, if any, for work performed on such a recognized holiday shall be in accordance with the applicable Schedule A.

C.    Exclusivity - No holidays other than those listed in Section 4-A above shall be recognized or observed.

## SECTION 5. REPORTING PAY

A.    Employees who report to the work location pursuant to their regular schedule and who are not provided with work shall be paid two hours reporting pay at straight

time rates. An employee whose work is terminated early by a Contractor due to severe weather, power failure, fire or natural disaster or for similar circumstances beyond the Contractor's control, shall receive pay only for such time as is actually worked. In other instances in which an employee's work is terminated early (unless provided otherwise elsewhere in this Agreement), the employee shall be paid for his full shift.

B.    When an employee, who has completed their scheduled shift and left the Program Work site, is "called out" to perform special work of a casual, incidental or irregular nature, the employee shall receive overtime pay at the rate of time and one-half of the employee's straight time rate for hours actually worked.

C.    When an employee leaves the job or work location of their own volition or is discharged for cause or is not working as a result of the Contractor's invocation of Section 7 below, they shall be paid only for the actual time worked.

D.    Except as specifically set forth in this Article there shall be no premiums, bonuses, hazardous duty , high time or other special premium payments or reduction in shift hours of any kind.

E.    There shall be no pay for time not actually worked except as specifically set forth in this Article and except where an applicable Schedule A requires a full weeks' pay for forepersons.

31

## SECTION 6.  PAYMENT OF WAGES

A.    Payday - Payment shall be made by check, drawn on a New York bank with branches located within commuting distance of the job site.  Paychecks shall be issued by the Contractor at the job site by 10 a.m. on Thursdays.  In the event that the following Friday is a bank holiday, paychecks shall be issued on Wednesday of that week.  Not more than 3 days wages shall be held back in any pay period.  Paycheck stubs shall contain the name and business address of the Contractor, together with an itemization of deductions from gross wages.

B.    Termination- Employees who are laid off or discharged for cause shall be paid in full for that which is due them at the time of termination.  The Contractor shall also provide the employee with a written statement setting forth the date of lay off or discharge.

## SECTION 7:  EMERGENCY WORK SUSPENSION

A Contractor may, if considered necessary for the protection of life and/or safety of employees or others, suspend all or a portion of Program Work.  In such instances, employees will be paid for actual time worked, except that when a Contractor requests that employees remain at the job site available for work, employees will be paid for that time at their hourly rate of pay.

## SECTION 8.  INJURY/DISABILITY

An employee who, after commencing work, suffers a work-related injury or disability while performing work duties, shall receive no less than 8 hours wages for that day.

Further, the employee shall be rehired at such time as able to return to duties provided there is still Program Work available for which the employee is qualified and able to perform.

## SECTION 9.  TIME KEEPING

A Contractor may utilize brassing or other systems to check employees in and out. Each employee must check in and out.  The Contractor will provide adequate facilities for checking in and out in an expeditious manner.

## SECTION 10.  MEAL PERIOD

A Contractor shall schedule an unpaid period of not more than 1/2 hour duration at the work location between the 3rd and 5th hour of the scheduled shift.  A Contractor may, for efficiency of operation, establish a schedule which coordinates the meal periods of two or more crafts.  If an employee is required to work through the meal period, the employee shall be compensated in a manner established in the applicable Schedule A.

## SECTION 11.  BREAK PERIODS

There will be no rest periods, organized coffee breaks or other non-working time established during working hours.  Individual coffee containers will be permitted at the employee's work location.

33

## ARTICLE 13 – APPRENTICES

### SECTION 1.  RATIOS

Recognizing the need to maintain continuing supportive programs designed to develop adequate numbers of competent workers in the construction industry and to provide craft entry opportunities for minorities, women and economically disadvantaged non-minority males, Contractors will employ apprentices in their respective crafts to perform such work as is within their capabilities and which is customarily performed by the craft in which they are indentured. Contractors may utilize apprentices and such other appropriate classifications in a ratio not to exceed 25% of the work force by craft (without regard to whether a lesser ratio is set forth in Schedule A), unless the applicable Schedules A provide for a higher percentage.  Apprentices and such other classifications as are appropriate shall be employed in a manner consistent with the provisions of the appropriate Schedule A.  The parties encourage the use of the Construction Skills 2000 program as an appropriate source of apprentice recruitment.

## ARTICLE 14 - SAFETY PROTECTION OF PERSON AND PROPERTY

### SECTION 1.  SAFETY REQUIREMENTS

Each Contractor will ensure that applicable OSHA and safety requirements are at all times maintained on the Program Work site and the employees and Unions agree to cooperate fully with these efforts.  Employees must perform their work at all times in a safe manner and protect themselves and the property of the Contractor and Authority from injury or harm.  Failure to do so will be grounds for discipline, including discharge.

## SECTION 2.  CONTRACTOR RULES

Employees covered by this Agreement shall at all times be bound by the reasonable safety, security, and visitor rules as established by the Contractors and the Construction Project Manager for this Program Work.  Such rules will be published and posted in conspicuous places throughout Program Work sites.

## SECTION 3.  INSPECTIONS

The Contractors and Construction Project Manager retain the right to inspect incoming shipments of equipment, apparatus, machinery and construction materials of every kind.

## ARTICLE 15 - NO DISCRIMINATION
## SECTION 1.  COOPERATIVE EFFORTS

The Contractors and Unions agree that they will not discriminate against any employee or applicant for employment because of race, color, religion, sex, sexual orientation, national origin, marital status, age or any other status provided by law, in any manner prohibited by law or regulation.

## SECTION 2.  LANGUAGE OF AGREEMENT

The use of the masculine or feminine gender in this Agreement shall be construed as including both genders.

## ARTICLE 16 - GENERAL TERMS

## SECTION 1. PROGRAM WORK RULES

The Construction Project Manager and the Contractors shall establish reasonable Program Work rules that are not inconsistent with this Agreement or rules common in the industry and are reasonably related to the nature of the work. These rules will be explained at the pre-job conference and posted at the Program Work sites and may be amended thereafter as necessary; notice of amendments will be provided to the appropriate Local Union. Failure of an employee to observe these rules and regulations shall be grounds for discipline, including discharge. The fact that no order was posted prohibiting a certain type of misconduct shall not be a defense to an employee disciplined or discharged for such misconduct when the action taken is for cause.

## SECTION 2. TOOLS OF THE TRADE

The welding/cutting torch and chain fall are tools of the trade having jurisdiction over the work performed. Employees using these tools shall perform any of the work of the trade. There shall be no restrictions on the emergency use of any tools or equipment by any qualified employee or on the use of any tools or equipment for the performance of work within the employee's jurisdiction.

## SECTION 3. SUPERVISION

Employees shall work under the supervision of the craft foreperson or general foreperson.

36

## SECTION 4.  TRAVEL ALLOWANCES

There shall be no payments for travel expenses, travel time, subsistence allowance or other such reimbursements or special pay except as expressly set forth in this Agreement.

## SECTION 5.  FULL WORK DAY

Employees shall be at their work area, as designated by the Contractor, at the starting time established by the Contractor.  The signatories reaffirm their policy of a fair day's work for a fair day's wage.

## SECTION 6.  COOPERATION AND WAIVER

The Construction Project Manager, Contractors and the Unions will cooperate in seeking any NYS Department of Labor, or any other government, approvals that may be needed for implementation of any terms of this Agreement.  In addition, the Council, on its own behalf and on behalf of its affiliated Local Unions and their individual members, intend the provisions of this Agreement to control to the greatest extent permitted by law, notwithstanding contrary provisions of any applicable prevailing wage, or other, law and intend this Agreement to constitute a waiver of any such prevailing wage, or other, law to the greatest extent permissible for work within the scope of this Agreement, including specifically, but not limited to those provisions relating to shift, night, and similar differentials and premiums.  This Agreement does not, however, constitute a waiver or consent to modify the prevailing wage schedules applicable to work not covered by this Agreement.

37

## ARTICLE 17.  SAVINGS AND SEPARABILITY

### SECTION 1.  THIS AGREEMENT

In the event that the application of any provision of this Agreement is enjoined, on either an interlocutory or permanent basis, or is otherwise determined to be in violation of law, or if such application may cause the loss of Program funding for all or any part of the Program, the provision involved (and/or its application to a particular part of the Program, as necessary) shall be rendered, temporarily or permanently, null and void, but where practicable the remainder of the Agreement shall remain in full force and effect to the extent allowed by law, unless the part or parts so found to be in violation of law are wholly inseparable from the remaining portions of the Agreement and/or are material to the purposes of the Agreement.  In the event a court of competent jurisdiction finds any portion of the Agreement to be invalid, the parties will immediately enter into negotiations concerning the substance affected by such decision for the purpose of achieving conformity with the court determination and the intent of the parties hereto for contracts to be let in the future.

### SECTION 2.  THE BID SPECIFICATIONS

In the event that the Authority's bid specifications, or other action, requiring that a successful bidder become signatory to this Agreement is enjoined, on either an interlocutory or permanent basis, is otherwise determined to be in violation of law, or may cause the loss of Program funding for all or any part of the Program, such requirement (and/or its application to a particular part of the Program, as necessary) shall be rendered, temporarily or permanently, null and void, but where practicable the Agreement shall remain in full force and effect to the extent allowed by law.  In such event, the Agreement shall remain in effect for contracts already bid

38

and awarded or in construction only where the Contractor voluntarily accepts the Agreement. The parties will enter into negotiations as to modifications to the Agreement to reflect the court or other action taken and the intent of the parties for contracts to be let in the future.

## SECTION 3. NON-LIABILITY

In the event of an occurrence referenced in Section 1 or Section 2 of this Article, neither the Authority, the Construction Project Manager or any Contractor, or any Union shall be liable, directly or indirectly, for any action taken, or not taken, to comply with any court order or injunction, other determination, or in order to maintain funding for Program Work. Bid specifications will be issued in conformance with court orders then in effect and no retroactive payments or other action will be required if the original court determination is ultimately reversed.

## SECTION 4. NON-WAIVER

Nothing in this Article shall be construed as waiving the prohibitions of Article 7 as to signatory Contractors and Unions.

## ARTICLE 18 - FUTURE CHANGES IN SCHEDULE A AREA CONTRACTS
## SECTION 1. CHANGES TO AREA CONTRACTS

A.    Schedule A to this Agreement shall continue in full force and effect until the Contractor and/or Union parties to the Area Collective Bargaining Agreements which are the basis for Schedule A notify the Construction Project Manager in writing of the hourly rate

39

changes agreed to in that Area Collective Bargaining which are applicable to work covered by this Agreement and their effective dates.

B.    It is agreed that any provisions negotiated into Schedule A collective bargaining agreements will not apply to work under this Agreement if such provisions are less favorable to those uniformly required of contractors for construction work normally covered by those agreements; nor shall any provision be recognized or applied on Program Work if it may be construed to apply exclusively, or predominantly, to work covered by this Agreement.

C.    Any disagreement between signatories to this Agreement over the incorporation into Schedule A of provisions agreed upon in the renegotiation of Area Collective Bargaining Agreements shall be resolved in accordance with the procedure set forth in Article 9 of this Agreement.

## SECTION 2. LABOR DISPUTES DURING AREA CONTRACT NEGOTIATIONS

The Unions agree that there will be no strikes, work stoppages, sympathy actions, picketing, slowdowns or other disruptive activity or other violations of Article 7 affecting the Program Work by any Local Union involved in the renegotiation of Area Local Collective Bargaining Agreements nor shall there be any lock-out on such Program Work affecting a Local Union during the course of such renegotiations.

## ARTICLE 19 - WORKERS' COMPENSATION ADR

### SECTION 1.

The Authority is continuing to investigate the feasibility of utilizing a Workers Compensation ADR program under Section 25 (2-C) of the New York Workers Compensation Law, to be used in conjunction with its Owner Controlled Insurance Program ("OCIP") for Program Work. The Authority's current OCIP expires December 31, 2004, at which time the program will be renewed. The Authority agrees that it will bargain with the Union over inclusion of a pilot Workers Compensation ADR program for use under its OCIP commencing January 1, 2005. This bargaining will include negotiations concerning the pilot program site, the availability of an ADR carrier with the necessary waivers or exemptions under the statute for the particular pilot program site, and other terms and conditions for such an ADR program. Contractors will be required to participate in any resulting program as determined by the Authority. In the event the pilot ADR program is successful and demonstrates meaningful savings for the Authority, the parties will negotiate regarding an ADR program on a Program wide basis. Notwithstanding the status of any of these negotiations, the remainder of this Agreement will remain in full force and effect.

<u>Memorandum of Agreement</u>
Signatory Addendum


The New York City School Construction Authority ("SCA") and the Building and Construction Trades Council of Greater New York and Vicinity ("Council") are parties to a Project Labor Agreement Covering Specified Construction Work Under the Department of Education's Capital Improvement and Restructuring Programs for 2005-2009 ("PLA").

By signing below, the International Brotherhood of Bricklayers and Allied Craftworkers, Local Union No. 1 ("Local Union No. 1"), hereby agrees to be bound by the terms of that PLA for covered work as if it were an original signatory thereto and the PLA is adopted and incorporated as if fully set forth herein, and references in the PLA to "Union(s)" and/or "Local Union(s)" shall include reference to Local Union No. 1.

Dated: *12 - 10 - 0 4*

International Union of Bricklayers and Allied
Craftworkers, Local Union No. 1

NYC School Construction Authority

AMENDED AGREEMENT AND DECLARATION OF TRUST
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS VACATION FUND

Effective 7/1, 04

9714417

## TABLE OF CONTENTS

Page

ARTICLE I      DEFINITIONS.................................................................................. 2

ARTICLE II     NAME .......................................................................................... 5

ARTICLE III    PURPOSE ..................................................................................... 5

ARTICLE IV     OBLIGATIONS OF AN EMPLOYER .................................................. 7

ARTICLE V      DEFAULT BY AN EMPLOYER ......................................................... 8

ARTICLE VI     TRUSTEE OFFICES, MEETINGS AND DESIGNATION ...................... 9

ARTICLE VII    POWERS AND DUTIES OF THE BOARD OF TRUSTEES ................. 15

ARTICLE VIII   VACATION PLAN .......................................................................... 26

ARTICLE IX     ACCOUNTS AND RECORDS .......................................................... 28

ARTICLE X      LIMITATIONS ON COMPENSATION ............................................... 30

ARTICLE XI     TAX EXEMPT STATUS ................................................................. 30

ARTICLE XII    RIGHTS OF PARTIES .................................................................... 31

ARTICLE XIII   DURATION AND TERMINATION OF THE TRUST ............................ 33

ARTICLE XIV    EXECUTION, INTERPRETATION AND AMENDMENTS ................... 34

WHEREAS, an AGREEMENT AND DECLARATION OF TRUST, has heretofore been entered into on the 1st day of July 1966; and

WHEREAS, said Agreement and Declaration of Trust was entered into in order to establish a trust under which moneys paid on account of vacation benefits would be and have been held to be known as the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS VACATION FUND;

WHEREAS, said Agreement and Declaration of Trust has been amended from time to time, and

WHEREAS, the Trustees of the New York City District Council of Carpenters Vacation Fund desire that the Amended Agreement and Declaration of Trust comply with the applicable requirements of the Labor Management Relations Act, 1947, as amended, and qualify as a "qualified trust" and as an "exempt trust" pursuant to the Internal Revenue Code of 1986, as it may be amended (the "Code"), and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained, the Agreement and Declaration of Trust, as amended, is restated below in its entirety, effective as of July 1, 2004.

Section 3.     It is intended that the Vacation Plan be a multi-employer plan as that term is defined in Section 3(37) of ERISA.

## ARTICLE IV

## OBLIGATIONS OF AN EMPLOYER

Section 1.     An Employer under this Trust Agreement is obligated to make Contributions to the Vacation Fund when due, as required by a collective bargaining agreement with the Union, under applicable law, or by other agreement with the Fund.

Section 2.     An Employer is obligated to furnish to the Trustees or their designee with the payment of each Contribution, or at such other times as the Trustees may request, written reports or reports in electronic media as to the wages paid to and hours worked by its employees, the Contributions due or payable to the Vacation Fund, other payroll data such as the names of the employees and their social security numbers, and such other information as the Trustees may reasonably require in connection with the administration of the Fund.

Section 3.     An Employer is obligated to make available to the Trustees, the Vacation Fund's counsel, auditors, payroll auditing firm, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll books and records whenever the Trustees consider such an examination to be advisable in connection with the administration of the Fund.

Section 4.     If the Trustees deem it necessary to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the independent certified public accounting firm designated by the Fund (the "Payroll Auditing Firm") its payroll and other personnel records with respect to present or former employees of the Employer which are necessary for the Payroll Auditing Firm to determine the accuracy and

7

AMENDED AGREEMENT AND DECLARATION OF TRUST
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND

Effective 7/1, 04

# TABLE OF CONTENTS

Page

ARTICLE I       DEFINITIONS.................................................................. 2

ARTICLE II      NAME .......................................................................... 5

ARTICLE III     PURPOSE ..................................................................... 5

ARTICLE IV      OBLIGATIONS OF AN EMPLOYER ................................ 7

ARTICLE V       DEFAULT BY AN EMPLOYER ...................................... 8

ARTICLE VI      TRUSTEE OFFICES, MEETINGS AND DESIGNATION ........... 9

ARTICLE VII     POWERS AND DUTIES OF THE BOARD OF TRUSTEES .......... 15

ARTICLE VIII    WELFARE PLAN ........................................................... 27

ARTICLE IX      ACCOUNTS AND RECORDS ......................................... 29

ARTICLE X       LIMITATIONS ON COMPENSATION ............................... 31

ARTICLE XI      TAX EXEMPT STATUS ................................................. 31

ARTICLE XII     RIGHTS OF PARTIES .................................................. 32

ARTICLE XIII    DURATION AND TERMINATION OF THE TRUST .............. 34

ARTICLE XIV     EXECUTION, INTERPRETATION AND AMENDMENTS ......... 35

WHEREAS, an AGREEMENT AND DECLARATION OF TRUST, has heretofore been entered into on the 1st day of July 1950; and

WHEREAS, said Agreement and Declaration of Trust was entered into in order to establish a trust under which moneys paid on account of health and welfare benefits would be and have been held to be known as the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND;

WHEREAS, said Agreement and Declaration of Trust has been amended from time to time, and

WHEREAS, the Trustees of the New York City District Council of Carpenters Welfare Fund desire that the Amended Agreement and Declaration of Trust comply with the applicable requirements of the Labor Management Relations Act, 1947, as amended, and qualify as a "qualified trust" and as an "exempt trust" pursuant to the Internal Revenue Code of 1986, as it may be amended (the "Code"), and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained, the Agreement and Declaration of Trust, as amended, is restated below in its entirety, effective as of _July 1, 2004_.

former Participants and Beneficiaries to pay a portion of the annual cost of Plan coverage to receive such benefits.

      Section 3.     It is intended that the Welfare Plan be a multi-employer plan as that term is defined in Section 3(37) of ERISA.

ARTICLE IV

**OBLIGATIONS OF AN EMPLOYER**

      Section 1.     An Employer under this Trust Agreement is obligated to make Contributions to the Welfare Fund when due, as required by a collective bargaining agreement with the Union, under applicable law, or by Participation Agreement or Memorandum of Agreement with the Fund.

      Section 2.     An Employer is obligated to furnish to the Trustees or their designee with the payment of each Contribution, or at such other times as the Trustees may request, written reports or reports in electronic media as to the wages paid to and hours worked by its employees, the Contributions due or payable to the Welfare Fund, other payroll data such as the names of the employees and their social security numbers, and such other information as the Trustees may reasonably require in connection with the administration of the Fund.

      Section 3.     An Employer is obligated to make available to the Trustees, the Welfare Fund's counsel, auditors, payroll auditing firm, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll books and records whenever the Trustees consider such an examination to be advisable in connection with the administration of the Fund.

      Section 4.     If the Trustees deem it necessary to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the independent certified public accounting firm designated by the Fund (the "Payroll Auditing

7

AMENDED AGREEMENT AND DECLARATION OF TRUST
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND

Effective 7/1, 04

# TABLE OF CONTENTS

Page

ARTICLE I      DEFINITIONS ................................................................ 2

ARTICLE II     NAME ........................................................................ 5

ARTICLE III    PURPOSE .................................................................. 5

ARTICLE IV     OBLIGATIONS OF AN EMPLOYER ............................ 6

ARTICLE V      DEFAULT BY AN EMPLOYER .................................. 7

ARTICLE VI     TRUSTEE OFFICES, MEETINGS AND DESIGNATION ............................ 8

ARTICLE VII    POWERS AND DUTIES OF THE BOARD OF TRUSTEES ........................ 15

ARTICLE VIII   PENSION PLAN ........................................................ 26

ARTICLE IX     ACCOUNTS AND RECORDS ...................................... 27

ARTICLE X      LIMITATIONS ON COMPENSATION .......................... 29

ARTICLE XI     TAX EXEMPT STATUS .............................................. 29

ARTICLE XII    RIGHTS OF PARTIES ................................................ 30

ARTICLE XIII   DURATION AND TERMINATION OF THE TRUST ................ 32

ARTICLE XIV    EXECUTION, INTERPRETATION AND AMENDMENTS ................ 33

WHEREAS, an AGREEMENT AND DECLARATION OF TRUST, has heretofore been entered into on the 12th day of December 1955; and

WHEREAS, said Agreement and Declaration of Trust was entered into in order to establish a trust under which moneys paid on account of pension and retirement benefits would be and have been held to be known as the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND;

WHEREAS, said Agreement and Declaration of Trust has been amended from time to time, and

WHEREAS, the Trustees of the New York City District Council of Carpenters Pension Fund desire that the Amended Agreement and Declaration of Trust comply with the applicable requirements of the Labor Management Relations Act, 1947, as amended, and qualify as a "qualified trust" and as an "exempt trust" pursuant to the Internal Revenue Code of 1986, as it may be amended (the "Code"), and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained, the Agreement and Declaration of Trust, as amended, is restated below in its entirety, effective as of July 1, 2004.

ARTICLE IV

OBLIGATIONS OF AN EMPLOYER

Section 1.     An Employer under this Trust Agreement is obligated to make Contributions to the Pension Fund when due, as required by a collective bargaining agreement with the Union, under applicable law, or by other agreement with the Fund.

Section 2.     An Employer is obligated to furnish to the Trustees or their designee with the payment of each Contribution, or at such other times as the Trustees may request, written reports or reports in electronic media as to the wages paid to and hours worked by its employees, the Contributions due or payable to the Pension Fund, other payroll data such as the names of the employees and their social security numbers, and such other information as the Trustees may reasonably require in connection with the administration of the Fund.

Section 3.     An Employer is obligated to make available to the Trustees, the Pension Fund's counsel, auditors, payroll auditing firm, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll books and records whenever the Trustees consider such an examination to be advisable in connection with the administration of the Fund.

Section 4.     If the Trustees deem it necessary to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the independent certified public accounting firm designated by the Fund (the "Payroll Auditing Firm") its payroll and other personnel records with respect to present or former employees of the Employer which are necessary for the Payroll Auditing Firm to determine the accuracy and completeness of the Contributions remitted to and the reports filed with the Fund by the Employer.

6

AMENDED AGREEMENT AND DECLARATION OF TRUST
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND

Effective 7/1, 04

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 2 |
| ARTICLE II | NAME | 5 |
| ARTICLE III | PURPOSE | 5 |
| ARTICLE IV | OBLIGATIONS OF AN EMPLOYER | 6 |
| ARTICLE V | DEFAULT BY AN EMPLOYER | 7 |
| ARTICLE VI | TRUSTEE OFFICES, MEETINGS AND DESIGNATION | 8 |
| ARTICLE VII | POWERS AND DUTIES OF THE BOARD OF TRUSTEES | 14 |
| ARTICLE VIII | ANNUITY PLAN | 26 |
| ARTICLE IX | ACCOUNTS AND RECORDS | 27 |
| ARTICLE X | LIMITATIONS ON COMPENSATION | 29 |
| ARTICLE XI | TAX EXEMPT STATUS | 29 |
| ARTICLE XII | RIGHTS OF PARTIES | 30 |
| ARTICLE XIII | DURATION AND TERMINATION OF THE TRUST | 32 |
| ARTICLE XIV | EXECUTION, INTERPRETATION AND AMENDMENTS | 33 |

WHEREAS, an AGREEMENT AND DECLARATION OF TRUST, has heretofore been entered into on the 1st day of July 1966; and

WHEREAS, said Agreement and Declaration of Trust was entered into in order to establish a trust under which moneys paid on account of annuity benefits would be and have been held to be known as the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND;

WHEREAS, said Agreement and Declaration of Trust has been amended from time to time, and

WHEREAS, the Trustees of the New York City District Council of Carpenters Annuity Fund desire that the Amended Agreement and Declaration of Trust comply with the applicable requirements of the Labor Management Relations Act, 1947, as amended, and qualify as a "qualified trust" and as an "exempt trust" pursuant to the Internal Revenue Code of 1986, as it may be amended (the "Code"), and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained, the Agreement and Declaration of Trust, as amended, is restated below in its entirety, effective as of *July 1, 2004*

intended that the Annuity Plan be a multi-employer plan as that term is defined in Section 3(37) of ERISA.

ARTICLE IV

OBLIGATIONS OF AN EMPLOYER

Section 1.     An Employer under this Trust Agreement is obligated to make Contributions to the Annuity Fund when due, as required by a collective bargaining agreement with the Union, under applicable law, or by other agreement with the Fund.

Section 2.     An Employer is obligated to furnish to the Trustees or their designee with the payment of each Contribution, or at such other times as the Trustees may request, written reports or reports in electronic media as to the wages paid to and hours worked by its employees, the Contributions due or payable to the Annuity Fund, other payroll data such as the names of the employees and their social security numbers, and such other information as the Trustees may reasonably require in connection with the administration of the Fund.

Section 3.     An Employer is obligated to make available to the Trustees, the Annuity Fund's counsel, auditors, payroll auditing firm, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll books and records whenever the Trustees consider such an examination to be advisable in connection with the administration of the Fund.

Section 4.     If the Trustees deem it necessary to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the independent certified public accounting firm designated by the Fund (the "Payroll Auditing Firm") its payroll and other personnel records with respect to present or former employees of the Employer which are necessary for the Payroll Auditing Firm to determine the accuracy and

6

AMENDED AGREEMENT AND DECLARATION OF TRUST
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS APPRENTICESHIP,
JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND

Effective 7/1, 04

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 2 |
| ARTICLE II | NAME | 5 |
| ARTICLE III | PURPOSE | 5 |
| ARTICLE IV | OBLIGATIONS OF AN EMPLOYER | 6 |
| ARTICLE V | DEFAULT BY AN EMPLOYER | 7 |
| ARTICLE VI | TRUSTEE OFFICES, MEETINGS AND DESIGNATION | 9 |
| ARTICLE VII | POWERS AND DUTIES OF THE BOARD OF TRUSTEES | 15 |
| ARTICLE VIII | APPRENTICESHIP PLAN | 27 |
| ARTICLE IX | ACCOUNTS AND RECORDS | 28 |
| ARTICLE X | LIMITATIONS ON COMPENSATION | 30 |
| ARTICLE XI | TAX EXEMPT STATUS | 30 |
| ARTICLE XII | RIGHTS OF PARTIES | 31 |
| ARTICLE XIII | DURATION AND TERMINATION OF THE TRUST | 33 |
| ARTICLE XIV | EXECUTION, INTERPRETATION AND AMENDMENTS | 34 |

WHEREAS, an AGREEMENT AND DECLARATION OF TRUST, has heretofore been entered into on the 1st day of July 1966; and

WHEREAS, said Agreement and Declaration of Trust was entered into in order to establish a trust under which moneys paid on account of benefits of the said trust would be and have been held to be known as the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND;

WHEREAS, said Agreement and Declaration of Trust has been amended from time to time, and

WHEREAS, the Trustees of the New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund desire that the Amended Agreement and Declaration of Trust comply with the applicable requirements of the Labor Management Relations Act, 1947, as amended, and qualify as a "qualified trust" and as an "exempt trust" pursuant to the Internal Revenue Code of 1986, as it may be amended (the "Code"), and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained, the Agreement and Declaration of Trust, as amended, is restated below in its entirety, effective as of *July 1, 2004*

request, written reports or reports in electronic media as to the wages paid to and hours worked by its employees, the Contributions due or payable to the Apprenticeship Fund, other payroll data such as the names of the employees and their social security numbers, and such other information as the Trustees may reasonably require in connection with the administration of the Fund.

Section 3.    An Employer is obligated to make available to the Trustees, the Apprenticeship Fund's counsel, auditors, payroll auditing firm, or designee for inspection and copying at reasonable times on the premises of the Employer, its payroll books and records whenever the Trustees consider such an examination to be advisable in connection with the administration of the Fund.

Section 4.    If the Trustees deem it necessary to audit an Employer's Contributions to the Fund, upon request, such Employer is obligated to furnish to the independent certified public accounting firm designated by the Fund (the "Payroll Auditing Firm") its payroll and other personnel records with respect to present or former employees of the Employer which are necessary for the Payroll Auditing Firm to determine the accuracy and completeness of the Contributions remitted to and the reports filed with the Fund by the Employer.

## ARTICLE V

## DEFAULT BY AN EMPLOYER

Section 1.    The failure of an Employer to pay the Contributions required hereunder by the date due shall be a violation of the applicable collective bargaining agreement between said Employer and the Union or Participation Agreement or Memorandum of Agreement between said Employer and the Fund, as well as a violation of the Employer's

7

```
---------------------------------------------------------x
```
In the Matter of the Arbitration between:

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN           NOTICE OF
RETRAINING, EDUCATIONAL AND INDUSTRY            INTENTION TO
FUND, NEW YORK CITY DISTRICT COUNCIL OF         ARBITRATE
CARPENTERS CHARITY FUND, By MICHAEL
FORDE and PAUL O'BRIEN, as TRUSTEES, THE NEW
YORK CITY AND VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION, and MICHAEL J.
FORDE, as EXECUTIVE SECRETARY- TREASURER,
DISTRICT COUNCIL FOR NEW YORK CITY AND
VICINITY, UNITED BROTHERHOOD CARPENTERS
AND JOINERS OF AMERICA.

-and-

K B C Concrete Construction.
```
---------------------------------------------------------x
```

PLEASE TAKE NOTICE, that the NEW YORK CITY

DISTRICT COUNCIL OF CARPENTERS PENSION FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS VACATION FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND, NEW YORK

CITY DISTRICT COUNCIL OF CARPENTERS APPRENTICESHIP,

JOURNEYMAN RETRAINING, EDUCATION AND INDUSTRY FUND, NEW

YORK CITY DISTRICT COUNCIL OF CARPENTERS CHARITY FUND, by MICHAEL J.

FORDE, and PAUL O'BRIEN as TRUSTEES, THE NEW YORK CITY AND VICINITY

CARPENTERS LABOR- MANAGEMENT CORPORATION, (collective know as the "New York

District Council of Carpenters Benefit Funds") and MICHAEL J. FORDE, as EXECUTIVE

SECRETARY-TREASURER, DISTRICT COUNCIL FOR NEW YORK CITY AND VICINITY,

UNITED BROTHERHOOD CARPENTERS AND JOINERS OF AMERICA, hereby demand and

intend, pursuant to the provisions of the collective bargaining agreement between K B C Concrete

Construction and the District Council for New York City and Vicinity of the United Brotherhood of

Carpenters and Joiners of America, to conduct an arbitration before Arbitrator Robert Herzog, Esq.

against K B C Concrete Construction with the respect to the following controversy:

   To compel to permit the Funds to conduct an audit of its books and records for

the period 1/20/2006 through date to determine whether is in compliance with

its obligation to contribute to the Funds.

   Pursuant to CPLR 7503 (c), unless you apply within twenty (20) days after the

service of this notice for a stay of the arbitration, you will thereafter be precluded from

objecting that a valid agreement was not made or has not been complied with and from

asserting in court the bar of limitations of time.


Dated:  August 13, 2007


By: _____
Steven C. Kasarda, Esq.
Counsel for Delinquencies & Collections,
New York District Council of Carpenters
Benefit Funds

To:  Robert Herzog, Esq.
   36 Springhouse Road
   Woodcliff Lake, New Jersey 07677

     and

   K B C Concrete Construction
   2116 Merrick Avenue; Suite 3007
   Merrick, NY 11566
   Attn: Mr. Chris Spirito, President

VIA CERTIFIED MAIL (7005 3110 0000 9759 7217)
RETURN RECEIPT REQUEST   (To Employer)

# Robert Herzog, Esq.

*Arbitrator* #17861

P.O. Box 25
Hillsdale, New Jersey 07642
(201) 930-1231

August 24, 2007

**K B C Concrete Construction**
**Attn: Mr. Chris Spirito, President**
**2116 Merrick Avenue, Suite 3007**
**Merrick, New York 11566**

Re: Employer: K B C Concrete Construction

Union: Michael Forde, as Executive Secretary-Treasurer, District Council of New York and Vicinity of the
United Brotherhood of Carpenters and Joiners of America

Funds: New York City District Council of Carpenters Pension Fund, New York City District Council of
Carpenters Welfare Fund, New York City District Council of Carpenters Vacation Fund, New York
City District Council of Carpenters Annuity Fund, New York City District Council of Carpenters
Apprenticeship, Journeyman Retraining, Educational and Industry Fund, New York City District
Council of Carpenters Charity Fund, United Brotherhood of Carpenters and Joiners of America Fund
and New York City and Vicinity Carpenters Labor - Management Corporation, by Michael J. Forde and
Paul O'Brien, as Trustees

<u>Issue</u>: K B C Concrete Construction <u>Audit of Books and Records</u>

## Hearing Date: September 12, 2007        Hearing Time: 10:10 A.M.

In accordance with the terms of the existing collective
bargaining agreement between the Employer and the Union, an
arbitration hearing will be held on the date and time indicated
concerning the claim that K B C Concrete Construction has failed to
permit the Funds to conduct an audit of its books and records as
required by the agreement.  The arbitration hearing will be held in
the **Conference Room, District Council of New York City and Vicinity
of the United Brotherhood of Carpenters and Joiners of America, 395
Hudson Street, New York, New York.**

Your presence at the hearing at the time and date indicated is
required and you should be fully ready to proceed.  Please bring to
the hearing the collective bargaining agreement and any records you
deem pertinent.

Very truly yours,


Robert Herzog
Arbitrator

cc:   Steven Kasarda., Esq.
      Attorney for the New York District Council of Carpenters Benefit Funds

**ORIGINAL**

**OFFICE OF THE IMPARTIAL ARBITRATOR**

--------------------------------------------X

In The Matter Of The Arbitration

        between

New York City District Council of Carpenters
Pension Fund, New York City District Council of
Carpenters Welfare Fund, New York City
District Council of Carpenters Vacation Fund,
New York City District Council of Carpenters
Annuity Fund, New York City District Council         **DEFAULT**
of Carpenters Apprenticeship, Journeyman
Retraining, Educational and Industry Fund,           **AWARD**
New York City District Council of Carpenters
Charity Fund, United Brotherhood of Carpenters
and Joiners of America Fund and The New York
City and Vicinity Carpenters Labor-Management
Corporation, by Michael J. Forde and Paul
O'Brien, as Trustees                                 M861
      And
Michael J. Forde, as Executive Secretary-
Treasurer, District Council for New York City
and Vicinity, United Brotherhood of Carpenters
and Joiners of America

               (Petitioners)

    -and-

K B C Concrete Construction
               (Employer)

--------------------------------------------X

BEFORE:  Robert Herzog, Esq.


    K B C Concrete Construction (hereinafter referred to as the

"Employer") and the District Council of New York City and Vicinity

of the United Brotherhood of Carpenters and Joiners of America, are

parties to a "Project Agreement: Voluntary Recognition" agreement

dated January 19, 2006 that incorporates by reference the

Independent Building Construction Collective Bargaining Agreement

1

with the Union and provides for arbitration of disputes before the undersigned Arbitrator as Impartial Arbitrator, and in which the Employer has therein agreed, for the duration of the project[1], to pay contributions toward employee benefit funds (hereinafter collectively referred to as the "Funds"). The Petitioners, as beneficiaries of the Project Agreement and the incorporate by reference Collective Bargaining Agreement, have standing before the Arbitrator. In accordance therewith, the Petitioners, by an August 13, 2007 Notice of Intention to Arbitrate, demanded arbitration. The Petitioners alleged the Employer failed to permit the Funds to conduct an audit of its books and records for the period of January 20, 2006 through to date to determine whether it is in compliance with its obligation to contribute to the Funds. A Notice of Hearing dated August 24, 2007 advised the Employer and the Petitioners that the arbitration hearing was scheduled for September 12, 2007.

The Notice of Hearing was sent to the Employer by regular and certified mail. A United States Postal Service Certified Mail Return Receipt evidences delivery of the Notice of Hearing to the Employer.

On September 12, 2007, at the place and time designated by the aforesaid Notice of Hearing, Steven Kasarda, Esq. appeared on behalf of the Petitioners. Despite the Employer having been sent notice of the proceeding and the claim against it, no appearance on its behalf

---

[1] The referred to project is Applebees, Veteran Road, Staten Island, New York.

2

was made.  Also, no written, mutually agreed upon waiver by the

parties to adjourn the proceeding, as required by the Collective

Bargaining Agreement, was presented.  The arbitration proceeded as a

Default Hearing.  Full opportunity was afforded the parties present

to be heard, to offer evidence, and to examine witnesses.  The

Petitioners thereupon presented their proofs to the Arbitrator.


The uncontroverted testimony and evidence established that:

- During the January 20, 2006 to to date period, the Employer was
  bound to Project Agreement and incorporated by reference
  Collective Bargaining Agreement with the District Council of New
  York City and Vicinity of the United Brotherhood of Carpenters and
  Joiners of America.

- The Project Agreement and Collective Bargaining Agreement
  obligated the Employer to make certain payments to Fringe Benefit
  Trust Funds on behalf of all its carpenter employees pursuant to
  schedules set forth in the Agreement.

- The Collective Bargaining Agreement authorized the Funds to
  conduct an audit of the Employer's books and records in order to
  verify that all the required contributions were made to each of
  the aforesaid Fringe Benefit Trust Funds maintained by the Funds.

- In accordance with this auditing provision, an accountant,
  employed by the Funds, sought to conduct an audit of the
  Employer's books and records.  In violation of this auditing

3

provision, the Employer did not consent to an audit of the Employer's books and records.

## AWARD

Based upon the substantial and credible evidence of the case as a whole:

1. K B C Concrete Construction is in violation of the terms of the Project Agreement and the Collective Bargaining Agreement;

2. K B C Concrete Construction is ordered to permit and facilitate the Funds conducting an audit of its books and records for the period of January 20, 2006 through to date to determine whether it is in compliance with its obligations to contribute to the Funds;

3. K B C Concrete Construction shall pay to the Funds forthwith the Petitioners' counsel's fees, the undersigned Arbitrator's fee, and all associated court costs in the following amounts:

|  |  |
|---|---|
| Court Costs | $  350.00 |
| Attorney's Fee | 1,500.00 |
| Arbitrator's Fee | 500.00 |
| TOTAL | $2,350.00 |

4. K B C Concrete Construction shall pay to the District Council Carpenters Benefit Funds the aggregate amount of two thousand

three hundred fifty dollars ($2,350.00) with interest to accrue at the rate of 10% from the date of this Award.

Dated: September 21, 2007                        Robert Herzog
                                                Arbitrator

State of New York  )
County of Rockland )


    I, Robert Herzog, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

                                                Robert Herzog
Dated: September 21, 2007                        Arbitrator


To:  K B C Concrete Construction
     Attn: Mr. Chris Spirito, President
     2116 Merrick Avenue, Suite 3007
     Merrick, New York 11566

     Steven Kasarda, Esq.
     New York City District Council Carpenters Benefit Funds
     395 Hudson Street
     New York, New York 10014

JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------X

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND,
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS
APPRENTICESHIP, JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS CHARITY
FUND, UNITED BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA FUND and THE NEW YORK CITY
AND VICINITY CARPENTERS LABOR MANAGEMENT
CORPORATION, by MICHAEL J. FORDE, and PAUL
O'BRIEN, as TRUSTEES, and MICHAEL J. FORDE, as
EXECUTIVE SECRETARY-TREASURER, DISTRICT
COUNCIL FOR NEW YORK CITY AND VICINITY,
UNITED BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA,

08 CV_____

**SUMMONS**

Plaintiffs,

-against-

KBC CONCRETE CONSTRUCTION, INC.,

Defendant.

--------------------------------------------------------------------------------X

TO:

      KBC Concrete Construction, Inc.
      2116 Merrick Avenue, Suite 3007
      Merrick, NY 11566

**YOU ARE HEREBY SUMMONED** and required to file with the clerk of this court and serve upon

      O'DWYER & BERNSTIEN, LLP
      52 Duane Street
      New York, New York 10007
      (212) 571-7100

an answer to the complaint which is herewith served upon you, within **30 days** after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief
demanded in the complaint.

**J. MICHAEL McMAHON**

CLERK

BY DEPUTY CLERK

DATE JAN 0 7 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA FUND and
THE NEW YORK CITY AND VICINITY CARPENTERS
LABOR-MANAGEMENT CORPORATION, by MICHAEL
J. FORDE, and PAUL O'BRIEN, as TRUSTEES, and
MICHAEL J. FORDE, as EXECUTIVE SECRETARY-
TREASURER, DISTRICT COUNCIL FOR NEW YORK
CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

08 CV_____

**COMPLAINT**

Plaintiffs,

-against-

KBC CONCRETE CONSTRUCTION, INC.,

Defendant.
------------------------------------------------------------------------X

Plaintiffs ("Benefit Funds"), by their attorneys O'Dwyer & Bernstien, LLP, for their

Complaint allege as follows:

## NATURE OF THE CASE

1.      This is an action to confirm and enforce an Arbitrator's Award rendered pursuant

to a collective bargaining agreement ("Agreement") between The District Council of New York

City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("Union") and

KBC Concrete Construction, Inc. ("Employer").

## JURISDICTION

2.      This Court has jurisdiction over this proceeding pursuant to section 301 of the

Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, sections 502(a)(3)(B)(ii), (d)(1),

(e) and (g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§§1132(a)(3)(B)(ii), (d)(1), (e) and (g), section 515 of ERISA, 29 U.S.C. §1145, and section 9 of

the Federal Arbitration Act, 9 U.S.C. §9.

3.      Personal jurisdiction is based upon Section 502(e)(2) of ERISA, 29 U.S.C.

§1132(e)(2).

## VENUE

4.      Venue is proper in this district in that Plaintiffs' offices are located in this district.

## PARTIES

5.      At all times relevant herein the Plaintiffs were jointly administered, multi-

employer, Taft-Hartley Benefit Funds administered by trustees designated by a union and by

employers, established and maintained pursuant to section 302(c)(5) of the LMRA, 29 U.S.C.

§186(c)(5). Plaintiffs Forde and O'Brien are fiduciaries of the Benefit Funds within the meaning

of ERISA sections 3(21) and 502, 29 U.S.C. §§1002(21) and 1132.

6.      The Benefit Funds are employee benefit plans within the meaning of sections 3(1)

and (3) of ERISA, 29 U.S.C. §1002(1) and (3) and are maintained for the purposes of providing

health, medical and related welfare benefits, pension and other benefits to eligible participants

and beneficiaries on whose behalf they receive contributions from numerous employers pursuant

to collective bargaining agreements between the employers and the Union.

7.      Upon information and belief defendant is a domestic corporation incorporated

under laws of the State of New York with a principal place of business located at 2116 Merrick

Avenue, Suite 3007, Merrick, NY 11566.

8.     The defendant is an employer within the meaning of section 3(5) of ERISA, 29
U.S.C. §1002 (5).

## FIRST CLAIM FOR RELIEF

9.     Defendant was bound at all relevant times by a Project Labor Agreement with the
Union, which, by its terms, became effective January 19, 2006.  Said Agreement provides, inter
alia, that the defendant shall furnish its books and payroll records when requested by the Benefit
Funds for the purpose of conducting an audit to ensure compliance with required benefit fund
contributions and for the submission of disputes to final, binding arbitration.

10.     A dispute arose during the period of the Agreement between the parties when the
Employer failed to comply with the Benefit Funds' demands to furnish its books and records for
the purpose of conducting an audit.

11.     Pursuant to the arbitration clause in the Agreement, the dispute was submitted to
arbitration to Robert Herzog, the duly designated impartial arbitrator.

12.     Thereafter, upon due notice to all parties, the arbitrator duly held a hearing and
rendered his award, in writing, dated September 21, 2007 determining said dispute.  Upon
information and belief, a copy of the award was delivered to the defendant (A copy of the award
is annexed hereto as Exhibit "A" and made part hereof).

13.     The arbitrator found that defendant had failed to comply with the Agreement as it
relates to paying fringe benefit monies and directed it to furnish the Plaintiffs with any and all
books and records, for the period of January 20, 2006 through September 21, 2007 including but
not limited to, the cash disbursement section of the cash book, general ledger, job location
records, daily time records and all certified payrolls.

3

14.    The arbitrator also found that defendant was required to pay the funds a sum of $2,350.00 pursuant to the Agreement, representing costs incurred in the arbitration.

15.    The defendant has failed to abide by the award.

WHEREFORE, Plaintiffs demand judgment against defendant as follows:

1.    For an order confirming the arbitration award in all respects;

2.    For entry of judgment in favor of the Plaintiffs ordering defendant and its officers to make available to the Plaintiffs or authorized representatives any and all books and records deemed necessary to conduct an audit including, but not limited to, the cash disbursement section of the cash book, general ledger, job location records, daily time records and all certified payrolls for the period January 20, 2006 through September 21, 2007.

3.    For entry of judgment in favor of the Benefit Funds and against KBC Concrete Construction, Inc. ordering defendant to pay the Benefit Funds a total sum of $2,350.00 with interest to accrue at the rate of 10% from the date of the award, pursuant to the arbitrator's award.

4.    For attorneys' fees and costs of this action;

5.    For such other and further relief as this court may deem just and proper.

Dated:  New York, New York
        January 7, 2008

                                    ANDREW GRABOIS (AG 3192)
                                    O'Dwyer & Bernstien, LLP
                                    Attorneys for Plaintiffs
                                    52 Duane Street
                                    New York, NY 10007
                                    (212) 571-7100

4

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

Index #  08 cv 00133                                              Purchased/Filed: January 7, 2008

STATE OF NEW YORK        UNITED STATES DISTRICT COURT                    SOUTHERN DISTRICT

---

The New York City District Council of Carpenters Pension Fund, et. al          Plaintiff

against

KBC Concrete Construction, Inc.                                                Defendant

---

STATE OF NEW YORK            SS.:
COUNTY OF ALBANY

_____ Jessica  Miller _____ , being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____ January 11, 2008 _____ , at __2:00 pm__ , at the office of the

Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Complaint with Exhibit

on

_____ KBC Concrete Construction, Inc. _____ , the

Defendant in this action, by delivering to and leaving with _____ Carol Vogt _____ ,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the

Office of the Secretary of State of the State of New York, __2__ true copies thereof and that at the time

of making such service, deponent paid said Secretary of State a fee of __40__ dollars; That said service

was made pursuant to Section __306 Business Corporation Law__ .

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office

of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said

defendant.

Description of the person served:  Approx. Age: __43__    Approx. Wt: __118__    Approx. Ht: __5'__

Color of skin: __White__    Hair color: __Brown__    Sex: __F__    Other: _____

Sworn to before me on this

__15th__ day of _____ January, 2008 _____

DONNA M. TIDINGS
NOTARY PUBLIC, State of New York
No. 01TI4898570, Qualified in Albany County
Commission Expires June 15, 2011

Jessica  Miller

Invoice•Work Order # SP0800294

*SERVICO. INC. - PO BOX 871 - ALBANY. NEW YORK 12201 - PH 518-463-4179*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, and THE NEW YORK
CITY AND VICINITY CARPENTERS LABOR
MANAGEMENT COOPERATION FUND,
by MICHAEL J. FORDE, and PAUL O'BRIEN,
as TRUSTEES and MICHAEL J. FORDE, as EXECUTIVE
SECRETARY-TREASURER, DISTRICT COUNCIL FOR
NEW YORK CITY AND VICINITY, UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA,

08 CV 133 (LTS)
ECF CASE

**CLERKS
CERTIFICATE**

                                Plaintiffs,

         -against-

KBC CONCRETE CONSTRUCTION CORP.,
                                Defendant.
------------------------------------------------------------------------X

         I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern District of

New York, do hereby certify that this action commenced on January 7, 2008 by filing of the Summons and

Complaint, and a copy of the Summons and Complaint having been served on the defendant, KBC Concrete

Construction Corp. on January 11, 2008, by delivering two (2) true copies thereof to Carol Vogt, an authorized

clerk in the Office of the Secretary of State of the State of New York, and proof of service being filed on

January 18, 2008.

         I further certify that the docket entries indicate that the defendant has not filed an answer or otherwise

moved with respect to complaint herein.  The default of the defendant is hereby noted.

Dated: _May 14 2008_
         New York, New York

                                   **J. MICHAEL MCMAHON**
                                   Clerk of the Court

                           By: _____
                                   Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND, and THE NEW
YORK CITY AND VICINITY CARPENTERS
LABOR MANAGEMENT COOPERATION FUND,
by MICHAEL J. FORDE and PAUL O'BRIEN,
as TRUSTEES, and MICHAEL J. FORDE, as EXECUTIVE
SECRETARY-TREASURER, DISTRICT COUNCIL
FOR NEW YORK CITY AND VICINITY, UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS
OF AMERICA,

08 CV 133 (LTS)
ECF CASE

**AFFIDAVIT OF
SERVICES**

Plaintiffs,

-against-

KBC CONCRETE CONSTRUCTION, INC.,

Defendant.
------------------------------------------------------------------X
STATE OF NEW YORK        )
                         :SS.:
COUNTY OF NEW YORK       )

ANDREW GRABOIS, being duly sworn, deposes and says:

1. I am a member of the Bar of this Court and am associated with the firm of O'Dwyer &

Bernstien, LLP, attorneys for plaintiffs herein and submit this affidavit in support of the instant

application for default judgment and order.

2. On January 7, 2008, Rich Gage, a paralegal in this office, drafted and revised a complaint,

cover sheet and other required documents and prepared them for filing with the Clerk of the Court. He

spent 1.0 hours on this matter at a billing rate of $125.00 per hour for a total of $125.00 in attorneys' fees.

 3. On January 7, 2008, your deponent reviewed and finalized the aforementioned documents. I spent 0.5 hours at a billing rate of $350.00 per hour for a total of $175.00 in attorneys' fees.

 4. On January 7, 2008, Mr. Gage prepared and filed the aforementioned documents with the Clerk of the Court. He spent 0.5 hours at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

 5. On January 7, 2008, Mr. Gage prepared and filed the aforementioned documents on the Electronic Case Filing system. He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

 6. On January 8, 2008, Mr. Gage prepared and mailed the aforementioned documents for service of process. He spent 0.5 hours on this matter at a billing rate of $125.00 per hour for a total of $62.50 in attorneys' fees.

 7. On January 18, 2008, Ian Henderson, a paralegal in this office prepared and filed the affidavit of service with the Court and on the ECF system. He spent 0.5 hours on this matter at a billing rate of $200.00 per hour for a total of $100.00 in attorneys' fees.

 8. On May 14, 2008, and May 15, 2008, Mr. Henderson drafted the required confirmation documents, including a proposed judgment and order and affidavit of services rendered. He spent a total of 5.0 hours on this matter at a billing rate of $200.00 per hour for a total of $1,000.00 in attorneys' fees.

 9. On May 15, 2008, your deponent reviewed and finalized the aforementioned default documents. I spent 0.5 hours on this matter at a billing rate of $350.00 per hour for a total of $175.00 in attorneys' fees.

 10. The cost of the process server to effectuate service of process was $60.00.

WHEREFORE, deponent respectfully requests allowance of attorneys' fees in the sum of $1,762.50 and costs arising out of this action in the amount of $60.00 for a total of $1,822.50.

ANDREW GRABOIS (AG 3192)

Sworn to before me this
15th day of May, 2008

NOTARY PUBLIC

ROSA FALLON
Commissioner of Deeds
City of New York - No. 2-12032
Qualified in Kings County
Commission Expires Jan 01, 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS PENSION FUND, NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS WELFARE FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
VACATION FUND, NEW YORK CITY                        08 CV 133 (LTS)
DISTRICT COUNCIL OF CARPENTERS                      ECF CASE
ANNUITY FUND, NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS APPRENTICESHIP,               **JUDGMENT**
JOURNEYMAN RETRAINING, EDUCATIONAL
AND INDUSTRY FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS CHARITY
FUND, and THE NEW YORK CITY AND VICINITY
CARPENTERS LABOR MANAGEMENT
COOPERATION FUND, by MICHAEL J. FORDE
and PAUL O'BRIEN, as TRUSTEES, and
MICHAEL J. FORDE, as EXECUTIVE SECRETARY-
TREASURER, DISTRICT COUNCIL FOR NEW YORK
CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

                                    Plaintiffs,

            -against-

KBC CONCRETE CONSTRUCTION, INC.,

                                    Defendant.
-------------------------------------------------------------------X

    This action having been commenced on January 7, 2008, by the filing of a Summons and

Complaint, and a copy of the Summons and Complaint having been served on the defendant KBC

Concrete Construction, Inc. on January 11, 2008 by delivering two (1) true copies of the same to the

Secretary of the State of New York, pursuant to Section 306(b) of New York Business Corporation

Law, and a proof of service having been filed on January 18, 2008, and the defendant not having

answered the Complaint, and the time for answering the Complaint having expired, and the Clerk of

the Court having issued its certificate of default on May 14, 2008, it is

ORDERED, ADJUDGED AND DECREED: That the Plaintiffs have judgment against

Defendant, pursuant to the arbitration award, in the liquidated amount of $2,350.00, representing costs

and fees arising out of the arbitration, in addition to attorneys' fees and costs arising out of this action

in the amount of $1,822.50 for a total of $4,172.50.


Dated: _____
      New York, New York

                                        _____
                                        Honorable Laura T. Swain
                                        United States District Judge

                                        This document was entered on the docket
                                        on _____.

STATE OF NEW YORK      )
                                     :SS.:
COUNTY OF NEW YORK  )

IAN K. HENDERSON, being duly sworn, deposes and says:  I am not a party to the action, am over 18 years of age and reside in Brooklyn, New York.  On the 15th day of May, 2008, I served plaintiffs' **NOTICE OF MOTION and SUPPORTING DOCUMENTATION** to the following party by depositing a true copy thereof in a post-paid wrapper, in an official depository, under the exclusive care and custody of the United States Postal Service within New York State, addressed to the following person at the last known address set forth after the name below:

TO:     KBC Concrete Construction, Inc.
        2116 Merrick Avenue, Suite 3007
        Merrick, NY 11566

IAN K. HENDERSON

Sworn to before me this
15th day of May, 2008

NOTARY PUBLIC

ANDREW GRABOIS
Notary Public, State of New York
No. 02GR6127051
Qualified in New York County
Commission Expires May 23, 20__